Marquis Dewayne JONES *v.* STATE of Arkansas

97-869                                967 S.W.2d 559

Supreme Court of Arkansas
Opinion delivered April 23, 1998

Bill Luppen, for appellant.

*Winston Bryant*, Att'y Gen., by: *C. Joseph Cordi, Jr.*, Asst. Att'y Gen., for appellee.

W.H. "DUB" ARNOLD, Chief Justice. Appellant, Marquis Dewayne Jones, brings this interlocutory appeal pursuant to Ark. Code Ann. § 9-27-318(h) (Supp. 1997), challenging the Pulaski County Circuit Court's order denying his motion to transfer a Class B felony terroristic act charge to the juvenile court. Our jurisdiction is authorized pursuant to Ark. Sup. Ct. Rule 1-2(11) (1997) as the record in this appeal was lodged before September 1, 1997, the effective date of our appellate jurisdiction rule change. *See In Re: Supreme Court Rule 1-2*, 329 Ark. 656 (June 30, 1997) (per curiam). Finding that the trial court's decision was not clearly erroneous, we affirm.

On February 12, 1997, Marquis Jones was charged by information with committing a terroristic act and fleeing in violation of Ark. Code Ann. §§ 5-13-310, 5-54-125 (Repl. 1997). Because Jones was sixteen years old at the time of the alleged crimes, he requested that the circuit court conduct a hearing to determine whether to retain jurisdiction or to transfer the case to juvenile court. *See* Ark. Code Ann. § 9-27-318(d). On April 25, 1997, the circuit court held an omnibus hearing in accordance with sections 9-27-318(e)-(f) and, after reviewing the evidence, ordered the misdemeanor fleeing charge to be transferred to juvenile court and retained jurisdiction over the felony fleeing charge. From this order comes the instant appeal.

■ Upon a finding by clear and convincing evidence that a juvenile should be tried as an adult, a court shall enter an order to that effect. Ark. Code Ann. § 9-27-318(f). In making that decision, the court must consider the following factors: (1) the seriousness of the offense, and whether violence was employed by the juvenile in the commission of the offense; (2) whether the offense is part of a repetitive pattern of adjudicated offenses that would lead to the determination that the juvenile is beyond rehabilitation under existing rehabilitation programs, as evidenced by past efforts to treat and rehabilitate the juvenile and the response to such efforts; and (3) the prior history, character traits, mental maturity, and any other factor that reflects upon the juvenile's prospects for rehabilitation. Ark. Code Ann. § 9-27-318(e). Although the court must consider all of these factors, it need not give them equal weight. *Thompson v. State*, 330 Ark. 746, 958 S.W.2d 1 (1997); *Fleetwood v. State*, 329 Ark. 327, 947 S.W.2d 387 (1997). Moreover, we will not reverse the court's determination unless it is clearly erroneous. *Id.*

During the omnibus hearing, Detective Steve Moore, a homicide detective with the Little Rock Police Department, testified that on September 26, 1996, he investigated a shooting near 13th and Woodrow streets. Detective Moore reported that Dewayne Boone had related to the police that he was at 14th and Woodrow streets when a subject he knew as Jones pulled up to him on a bicycle. Jones allegedly said to Boone, "What's up?" He then pointed a gun at Boone and fired the gun two or three

times at Boone's car. The gunfire damaged the passenger window, the passenger door, and a rear window. Boone provided the police with Jones's name and address, and later positively identified Jones from a police photo-spread.

Dwayne Wilkins, Jones's juvenile-court "intensive supervision" probation officer, also testified at the omnibus hearing. According to Wilkins, an "intensive supervision" officer is assigned to more serious offenders and oversees compliance with stricter probation rules. Wilkins added that such officers have smaller caseloads and surveillance officers on staff due to the intensity of the program. Jones was assigned to Wilkins on November 13, 1995 for probation relating to a minor in possession of a handgun charge. Wilkins also reported that Jones was previously on probation in 1992 for two Class C felony counts of theft by receiving.

According to Wilkins, Jones completed some rehabilitation programs during his probation, including a program at Recovery Way, a drug and alcohol rehabilitation center, and individual and family counseling through Stepping Stone. Following the Recovery Way program, Jones was required to participate in drug screens. After testing positive during a drug screen, Jones was ordered to complete the C Step Program, a ten-week boot camp at Camp Robinson. Jones failed to report to C Step. As a result, the juvenile court issued a pickup order; simultaneously, Jones was in the county jail on another charge. Ultimately he was returned to the juvenile court and sent to training school, the last stop on the juvenile-court rehabilitation-program line.

Although Wilkins testified that he believed Jones would still benefit from the juvenile-court system, he indicated that Jones had expressed an unwillingness to attend the C Step program. Additionally, Wilkins testified that Jones had a "couple" of curfew violations, and that Jones's mother had reported probation violations when Jones had left home a "couple" of times without permission.

Jones also received a score of ten on a risk-assessment test, used to determine if a juvenile should be transferred to the Department of Youth Services. The assessment test is based on

factors including: (1) the type of offenses committed; (2) the number of felonies in the last three years; (3) the number of misdemeanors in the past year; (4) the age of the juvenile at his first adjudication; (5) prior out-of-home placements; and (6) incident offenses (a) related to drug use, (b) involving weapons, (c) resulting in personal injury to a victim, and (d) involving gang or peer-group activity. Commitment to the Department of Youth Services is recommended for a score of ten points or higher. Notably, one risk point is assessed for juveniles less than thirteen years old at the time of their first offense; Jones was twelve years old when he first entered the juvenile-court system.

■ Tina Jones, the appellant's mother, was the final witness in the trial court proceeding. She indicated that, at the time of the trial, Jones had completed the eighth grade but was too old to return to school and too young to pursue a GED. Ms. Jones suggested that a Job Corps program out of this geographic area might benefit her son but that Jones had told her that he believed he could not complete the C Step program. She also explained that Jones was unable to attend the C Step program because he had broken his arm twice prior to two opportunities to attend C Step. We can dispense with Jones's rehabilitation argument by referring to his age. *See Rice v. State*, 330 Ark 257, 954 S.W.2d 216 (1997). Jones's birthday is May 17, 1980. As initial commitment to the Division of Youth Services cannot commerce after the eighteenth birthday of the youth under Ark. Code Ann. § 9-28-209(d) (Supp. 1995), Jones will be beyond the age when he can be rehabilitated in the juvenile system on May 17, 1998, when he turns eighteen.

■ We must note that some of the evidence considered by the trial judge may have constituted inadmissible hearsay. However, there was no objection to such evidence, and hearsay, admitted without objection, may constitute substantial evidence to support a ruling. *Sanders v. State*, 326 Ark. 415, 932 S.W.2d 315 (1996) (citing *Clemmons v. State*, 303 Ark. 265, 795 S.W.2d 927 (1990)).

■ In light of the three factors outlined in section 9-27-318(e), the trial court had clear and convincing evidence to sup-

port its denial of the appellant's motion. First, the terroristic act charge involved firing a gun at an occupied vehicle, unquestionably an offense involving violence. Pursuant to section 5-13-310, the offense of committing a terroristic act results when a person, while not in the commission of a lawful act, shoots, or in any manner projects an object, with the purpose of causing injury to persons or property, at a conveyance that is being operated or that is occupied by passengers. The mere fact that gunfire causes only property damage when aimed at an occupied vehicle cannot negate the violent nature of the offense.

■ Second, Jones's current charge appears to be part of a repetitive pattern of adjudicated offenses, increasing in seriousness. Moreover, he has received the extent of treatment offered by existing juvenile-court rehabilitation programs, including Recovery Way, Stepping Stone counseling, and training school. Regardless of the reason, Jones twice failed to attend the final court-ordered alternative, C Step boot camp. Jones having exhausted the juvenile-court programs, the circuit court could conclude that past efforts at his rehabilitation have not been successful and do not justify referring him back to juvenile court.

■ Third, Jones's prior history, including a minor-in-possession-of-a-handgun and two felony theft charges, curfew violations, and a positive drug screen, demonstrates that Jones's prospects for rehabilitation are remote. Reviewing the evidence presented to the trial court under the section 9-27-318(e) factors, we find that the circuit's order was not clearly erroneous and that its decision to try Jones as an adult was based on clear and convincing evidence. Accordingly, we affirm.