Tyson LANDRUM *v.* STATE of Arkansas

CA CR 97-1090                                        971 S.W.2d 278

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered July 1, 1998

*Dunham & Faught, P.A.,* by: *James Dunham,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Mac Golden,* Ass't Att'y Gen., for appellee.

SAM BIRD, Judge. Tyson Landrum brings this interlocutory appeal from the trial judge's refusal to transfer his case to juvenile court. At the age of sixteen appellant was charged with breaking or entering pursuant to Ark. Code Ann. § 5-39-202 (Repl. 1997), a Class D felony, and theft of property pursuant to Ark. Code Ann. § 5-36-103 (Repl. 1997), a Class A misdemeanor. The information alleged that appellant and another juvenile had broken into three vehicles and taken property having a value of less than $500.00. Appellant filed a motion to transfer the charges to juvenile court, and, following a hearing, appellant's motion was denied. On appeal appellant argues that the trial court erred in refusing to transfer his case to juvenile court.

Arkansas Code Annotated section 9-27-318 (Supp. 1997) provides in pertinent part:

> (e) In making the decision to retain jurisdiction or to transfer the case, the court shall consider the following factors:
> (1) The seriousness of the offense, and whether violence was employed by the juvenile in the commission of the offense;
> (2) Whether the offense is part of a repetitive pattern of adjudicated offenses which would lead to the determination that the juvenile is beyond rehabilitation under existing rehabilitation programs, as evidenced by past efforts to treat and rehabilitate the juvenile and the response to such efforts; and
> (3) The prior history, character traits, mental maturity, and any other factor which reflects upon the juvenile's prospects for rehabilitation.

On appeal of a decision to retain jurisdiction or transfer a case to the juvenile court, the trial court's findings will not be reversed unless clearly erroneous. *Davis v. State*, 319 Ark. 613, 893 S.W.2d 768 (1995); *Bell v. State*, 317 Ark. 289, 877 S.W.2d 579 (1994); *Beck v. State*, 317 Ark. 154, 876 S.W.2d 561 (1994); *Vickers v. State*, 307 Ark. 298, 819 S.W.2d 13 (1991); *Porter v. State*, 43 Ark. App. 110, 861 S.W.2d 122 (1993).

At a hearing held on appellant's motion to transfer, appellant testified that he was sixteen years old, was born July 24, 1980, lived with his aunt, previously lived with his grandmother, and had never known his father. His mother lived in Oklahoma, but it had been approximately two years since he had lived with her per-

manently. Appellant said for the last year he had been involved in a program with an adult "father figure," who was supposed to teach him discipline, respect for authority, obedience to the law, and social skills.

Appellant testified that he had only been in trouble with the law once, when he was put on probation in juvenile court for disorderly conduct, and that he had completed his community service and fulfilled all the conditions of his probation. He told the judge that he was a student at Russellville High School, that he would be playing football when he reached the eleventh grade, and that he would make a good-faith effort to comply with whatever requirements are placed on him in juvenile court. Appellant admitted he had been in some trouble at school in the ninth grade but he had been promoted to tenth grade. He said he had been suspended but he "do[es] not get in trouble these days."

On cross-examination appellant admitted that one of the terms of his juvenile court probation had been to apologize to his principal, Rudy Parks, and he said he had apologized to Mr. Parks's face. However, he stated that he had also been ordered to make a written apology, pay a $10 per month probation fee, and pay $35 in court costs, none of which he had done. He said he had moved to Oklahoma at the end of 1996 to live with his mother but moved back to Russellville because the Russellville School District would not send his records to Oklahoma. Appellant also admitted that he had been in two fights while in the tenth grade.

Rudy Parks, principal at Gardner Junior High School, testified that between August 23, 1995, and May 8, 1996, appellant had been reported to him thirty-four times for general disrespect for school rules, tardiness, truancy, fighting, insubordination, and disruptive behavior in the classroom. He denied that appellant had apologized to him as required by his previous juvenile probation. He said appellant dropped out of school in November, 1995, and went to Oklahoma. He said that he had told appellant and his mother several times that the Oklahoma school had to request appellant's school records, and that he had not sent the records to Oklahoma because the Oklahoma school never

requested them. Appellant returned to the Russellville school in January, 1996. During the rest of the school year he was reported twenty times for disciplinary infractions and received twelve suspensions but was never expelled from school.

James Krohn, appellant's juvenile probation officer, testified that appellant was placed on a year of probation on November 21, 1995, for disorderly conduct, a misdemeanor. As conditions of his probation, appellant was supposed to perform thirty-two hours of public service work, make a written apology to Rudy Parks, pay $10 a month probation fee, and pay $35 court costs. According to Mr. Krohn, appellant did none of those things. Furthermore, appellant was supposed to report monthly to his juvenile probation officer, but he reported only once during the entire year. In appellant's favor, Krohn did say that, as far as he knew, no other criminal charges had been filed against appellant until the charges were filed in this case.

In denying appellant's motion to transfer, the trial judge went down the list of things he was required to consider in making his decision and discussed each one. He said the crime of breaking or entering was serious but there was no violence involved. He noted that although appellant did not have a repetitive pattern of adjudicated offenses, appellant had been adjudged delinquent in juvenile court and placed on probation. However, the judge observed that the juvenile court's order of probation "wasn't worth the paper it was written on," because appellant had not done any of the things he was required to do. The judge reviewed appellant's prior history, character traits, and mental maturity, and said that appellant's past conduct did not indicate he would even do the minimal things his juvenile probation had required of him. The judge concluded there was only a marginal chance of rehabilitation because juvenile court had asked very little of appellant before but appellant had not done any of the things asked, and the judge said he doubted appellant would do them in the future. Thus, because of his opinion that juvenile court could not offer anything in the way of rehabilitation for appellant, he denied appellant's motion to transfer.

Appellant argues that the factors set forth in Ark. Code Ann. § 9-27-318(e) mandate a transfer to juvenile court. In support of this argument appellant cites *Blevins v. State*, 308 Ark. 613, 826 S.W.2d 265 (1992), *Banks v. State*, 306 Ark. 273, 813 S.W.2d 267 (1991), and *Pennington v. State*, 305 Ark. 312, 807 S.W.2d 660 (1991). Appellant contends that the denial to transfer in *Blevins* was based on the judge's conclusion that the charge was "too serious" to be handled by the juvenile court and that the decision of the judge in the instant case was based on similar considerations. We do not find appellant's argument persuasive.

In *Blevins, supra,* the juvenile was charged with possession of a controlled substance with intent to deliver. The trial judge denied the appellant's motion to transfer his case to juvenile court based on the seriousness of the offense alone. The appellate court reversed citing evidence that appellant was sixteen years old at the time of the incident, he had no prior record, he regularly attended high school, his grades were C's and D's, he had previously participated in the high school's athletic program, and Blevins's mother testified that her son lived at home, and that she had no discipline problems with him. In reversing, our supreme court held that the trial court was incorrect in basing its refusal to transfer solely upon a determination that the crime charged was serious.

We do not find *Blevins* to support appellant's position since it is clear that the trial judge in the case at bar did not base his refusal to transfer solely on the seriousness of the crime charged. In fact, the trial judge said that although he considered the charge to be serious, it did not involve violence. Furthermore, unlike the juvenile in *Blevins* who had no prior criminal record, who lived at home with his mother, and who had no history of disciplinary problems at home or at school, appellant has a prior juvenile record, has a significant record of disciplinary problems at school, wilfully dropped out of school for several months for no apparent reason, and apparently has no significant parental authority.

In *Pennington v. State*, 305 Ark. 312, 807 S.W.2d 660 (1991), the seventeen-year-old appellants were charged with criminal mischief after some tombstones were knocked over in a local ceme-

tery. Their motion to transfer to juvenile court was denied. Following the testimony and arguments of counsel, the trial court acknowledged that the crime involved was not violent in nature, that the act did not appear to be part of a pattern of past or future criminal activity, that the juveniles showed no history of problems "other than problems that most kids go through," and that there was no reason to believe they could not be rehabilitated. However, the trial court ignored its own favorable findings and deferred solely to the prosecutor's judgment in selecting a forum for trial.

Our supreme court reversed and held that this abdication of responsibility on the part of the trial court defeated the purpose of the Arkansas Juvenile Code section 9-27-318, which recognizes the need for careful, case-by-case evaluation when juveniles are charged with criminal offenses and clearly delegates the responsibility for determining which court is most appropriate to the court in which the charges were brought.

■ Here, the trial court gave careful consideration to the factors required to be considered by § 9-27-318(e) in deciding whether a case should be retained in circuit court or transferred to juvenile court, and concluded that, because of the appellant's prior criminal history, his "lack of responsibility and mental maturity," his numerous suspensions from, and willful failure to attend school, appellant's prospects for rehabilitation were poor or non-existent, and that jurisdiction of the case should be retained in circuit court.

■ Nor do we find *Banks, supra,* to support appellant's position. In *Banks* the State charged a juvenile as an adult in circuit court, with four offenses: (1) aggravated robbery, (2) attempted capital murder, (3) theft of property valued at less than $200, and (4) fleeing from arrest. Banks was fourteen years old at the time the alleged offenses occurred and fifteen when the proceedings that were the subject of the appeal occurred. Only one of the offenses charged, aggravated robbery, was listed in Ark. Code Ann. § 9-27-318(b)(1) (Repl. 1991) as an offense for which a fourteen-year-old juvenile could be charged as an adult. The judge denied the motion to transfer to juvenile court and refused

to hear the defendant's witnesses on the factors to consider before ruling on a transfer. The supreme court reversed and remanded the case so the circuit court could again consider the motion and, after hearing evidence on the statutory criteria, rule on the motion to transfer the case to juvenile court.

Appellee cites *Macon v. State*, 323 Ark. 498, 915 S.W.2d 273 (1996), where the appellant, a seventeen year old, was charged in circuit court with two counts of terroristic act and one count of aggravated assault. He moved to transfer his charges to juvenile court, and after a hearing, the trial judge denied his motion. The Arkansas Supreme Court said that proof need not be introduced against the juvenile on each factor, *Davis v. State*, 319 Ark. 613, 893 S.W.2d 768, 769 (1995), and, in making its decision whether to retain or transfer a juvenile's case, the trial court is not required to give equal weight to each of the factors set out in Ark. Code Ann. § 9-27-318(e). *Id.* It also held that where the trial court considered appellant's prior history, noting that he had been convicted and placed on probation before, and concluded that the juvenile rehabilitative programs available would be extremely limited and inappropriate; and where the trial court's findings reflected that appellant's offense was both serious and violent, and therefore fell within the first factor described under Ark. Code Ann. § 9-27-318(e)(1), such proof was sufficient to support the trial court's decision to deny appellant's motion to transfer.

In the instant case, appellant's charges were not for violent crimes. However, the evidence showed that appellant had been adjudicated delinquent in juvenile court and had been placed on probation for a year. During that year he had done nothing he was ordered to do. Furthermore, some of appellant's testimony at the hearing was contradicted by other evidence. Appellant testified that he had completed his community service, but Mr. Krohn said that he had not. Appellant also testified that he had apologized to Mr. Parks face to face, but Mr. Parks said that he had not.

The dissent suggests that the trial judge's decision to deny appellant's motion to transfer is not consistent with his comments from the bench when he announced his ruling and that his comments indicate that the judge applied only a "preponderance of

the evidence" standard instead of the more stringent "clear and convincing" standard required by section 9-27-318(e). We do not interpret the judge's remarks in that way.

The comments of the judge, as quoted in the dissenting opinion, came at the end of a lengthy discussion by the judge during which he analyzed the factors set out in section 9-27-318(e) and applied them to the circumstances of appellant. He concluded that the first factor (the seriousness of the offense and whether violence was employed) did not justify retention of jurisdiction in circuit court. Regarding the second factor (whether the offense is part of a repetitive pattern of adjudicated offenses), the judge noted appellant's prior delinquency adjudication in juvenile court and surmised that the juvenile's lack of success in fulfilling the obligations of his juvenile probation made him a marginal candidate for rehabilitation in other juvenile programs. Finally, in considering the third factor (prior history, character traits, mental maturity and other factors reflecting on prospects for rehabilitation), the judge made it clear that this was the factor that troubled him most. He again referred to appellant's prior failure in the juvenile program, noted that appellant had an extensive history of disciplinary problems at school, and questioned why there was no evidence presented by either appellant or the State as to how appellant might now meet rehabilitation objectives in a juvenile program, considering that he had completely failed to do so in the past. The judge concluded that appellant's past failure in the juvenile justice system was indicative of what could be expected of appellant if his case was transferred to juvenile court.

Only at this point in his discussion did the judge make the statements quoted in the dissenting opinion. Clearly, the judge was expressing the obvious fact that some of the factors weighed in favor of transferring the case to juvenile court, while other factors favored retaining jurisdiction in circuit court. Our supreme court has held that the trial court need not give equal weight to all the factors set forth in § 9-27-318(e), *Jones v. State*, 332 Ark. 617, 967 S.W.2d 559 (1998); nor is it required that all of the factors weigh against appellant. *Ashing v. State*, 288 Ark. 75, 702 S.W.2d 20 (1986). It is obvious that the judge gave greater weight to the third factor than he did to the first and second factors, just as our supreme court has stated that he has the discretion to do. The meaning of the judge's statement, "It's kind of a

draw," is made clear by his subsequent statements in which he expressed, on the one hand, his "gut reaction" to "send him back down there [to juvenile court]," and, on the other hand, his prediction that appellant's prospects for rehabilitation in the juvenile court system are improbable, considering his past failure there. We do not interpret those remarks as indicating any lack of resolve or conviction on the part of the judge to the correctness of his decision.

The accuracy of our interpretation of the judge's remarks is reinforced by his comment that "as far as the court being required to make clear and convincing evidence, I think it weighs in favor of retaining jurisdiction based on the fact that I don't think Juvenile court can do anything for him." From those words it is obvious that the judge knew that he was required to apply a "clear and convincing" standard in determining whether appellant's case should be transferred, and that, in applying that standard, the factors weighed in favor of denying appellant's motion and retaining jurisdiction of appellant's case in circuit court. It is a strained interpretation of the judge's words to suggest, as does the dissent, that the judge applied a "preponderance of the evidence" standard in making his decision.

■ After a careful examination of the evidence upon which the trial judge's decision was based, we cannot say that the decision is clearly erroneous.

Affirmed.

ROBBINS, C.J., PITTMAN, and AREY, JJ., agree.

GRIFFEN and ROAF, JJ., dissent.

ANDREE LAYTON ROAF, Judge, dissenting. I would reverse this case and remand for transfer to juvenile court, because a circuit court's decision to retain jurisdiction of criminal charges against a juvenile must be supported by clear and convincing evidence, and in this case, it most clearly was not. Arkansas Code Annotated section 9-27-318(f) states:

> Upon a finding by clear and convincing evidence that a juvenile should be tried as an adult, the court shall enter an order to that effect.

We have defined clear and convincing evidence as:

evidence by a credible witness whose memory of the facts about which he testifies is distinct, whose narration of the details is exact and in due order, and whose testimony is so direct, weighty, and convincing as to enable the fact-finder *to come to a clear conviction, without hesitance,* of the truth of the facts related. It is simply that degree of proof that will produce in the trier of fact *a firm conviction* of the allegations sought to be established.

*First Nat'l Bank v. Rush,* 30 Ark. App. 272, 785 S.W.2d 474 (1990) (emphasis supplied).

The trial judge's comments from the bench when he announced his ruling are dispositive of this case:

> *It's kind of a draw situation. My gut reaction is that it's not serious enough and I ought to send him back down there*; but at the same time he's been down there and he hadn't done a thing juvenile court has ordered him to do.
>
> . . .
>
> You know, as far as the court being required to make clear and convincing evidence, I think it weighs in favor of retaining jurisdiction based on the fact that I don't think juvenile court can do anything for him.

(Emphasis added.) If the trial judge found the situation "kind of a draw," the evidence adduced at the hearing obviously inspired no "firm conviction" in the trier of fact.

It is a basic maxim that criminal statutes are to be strictly construed and any doubts are to be resolved in favor of the defendant. *Puckett v. State,* 328 Ark. 355, 944 S.W.2d 111 (1997); *Leheny v. State,* 307 Ark. 29, 818 S.W.2d 236 (1991). I find that strictly construing the statute, as we must, leads to the conclusion that the trial judge denied this motion to transfer by a bare preponderance of the evidence, not by the far more stringent "clear and convincing" standard mandated by Ark. Code Ann. § 9-27-318(f). This failing, standing alone, mandates reversal of this case.

However, there is another, equally compelling reason for reversal. The trial court is required to consider the following three factors found in Ark. Code Ann. § 9-27-318 (Supp. 1997), when deciding whether to retain jurisdiction or to transfer a case:

> (1) The seriousness of the offense, and whether violence was employed by the juvenile in the commission of the offense;

(2) Whether the offense is part of a repetitive pattern of adjudicated offenses which would lead to the determination that the juvenile is beyond rehabilitation under existing rehabilitation programs, as evidenced by past efforts to treat and rehabilitate the juvenile and the response to such efforts; and

(3) The prior history, character traits, mental maturity, and any other factor which reflects upon the juvenile's prospects for rehabilitation.

Here, the denial of transfer hinged solely on the third, "catchall" factor.

The trial judge correctly recognized that the offense, breaking into three cars, was not sufficiently serious to warrant the denial based on the first factor. As to the second statutory factor, our supreme court has squarely addressed what is meant by a "repetitive pattern of adjudicated offenses" in several cases. In *McClure v. State*, 328 Ark. 35, 942 S.W.2d 243 (1997), the juvenile had one prior adjudication of commercial burglary and theft. Although the court affirmed the denial of transfer because of other factors, it had this to say about the second factor:

> [a]ppellant had at least one prior adjudication and at least one attempt at rehabilitation under the juvenile system. One prior adjudication and attempted rehabilitation does not a repetitive pattern make. Thus, we agree with the trial court that the evidence under this factor is neutral.

In this case, Landrum had only one prior adjudication in juvenile court for disorderly conduct, a misdemeanor.

However, the trial court stated that, based on Landrum's failure to comply with conditions of his probation for this misdemeanor offense, the juvenile court officer "hadn't gotten anything done with this guy" and that this failed attempt was an indication that the juvenile court "could not do anything for him." Although Landrum's probation officer testified that he failed to comply with the terms of his probation and only attended a single appointment, there was no evidence of any attempt for nearly a year to either follow up on Landrum or to revoke his probation. See Ark. Code Ann. § 9-27-339 (Repl. 1998). This troubled young man, who had been farmed out first with his grandmother and then with his aunt — no family member spoke up for him at his transfer hearing

— was thus left to his own devices in this half-hearted rehabilitative effort.

Although there was some discussion at the hearing of the C-Step "boot camp" juvenile program, and Landrum testified that he believed that he could complete the course, he was not given the opportunity for this more intensive effort at rehabilitation. However, it is not too late, for Landrum is still only seventeen years old. Consequently, I would reverse and remand this case for immediate transfer to juvenile court.

GRIFFEN, J., joins.