2009 Ark. 341

**Joshua Leallen LOFTON, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 08–693.**

Supreme Court of Arkansas.

June 4, 2009.

William O. "Bill" James, Jr., Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: LeaAnn J. Irvin, Ass't Att'y Gen., for appellee.

JIM GUNTER, Justice.

This appeal arises from the denial of Appellant Joshua Leallen Lofton's motion to transfer his capital murder and aggravated robbery cases to juvenile court. We affirm the circuit court's ruling.

On July 22, 2007, North Little Rock Police officers responded to a shooting in the Wal–Mart Supercenter parking lot on McCain Boulevard. When the officers arrived, they found Dean Warden with a gunshot wound to the neck. Warden was later pronounced dead at the scene. Officers viewed surveillance footage from Wal–Mart's video surveillance system. The video revealed that a robbery had occurred moments prior to the shooting. Based on eyewitness testimony and the surveillance footage, the officers were able to develop a suspect vehicle, a Chrysler 300. Officers located the vehicle and its owner, Sharice Williams. The officers took Williams's statement in which she admitted to being in the parking lot that day with then seventeen-year-old Appellant Joshua Lofton.

The officers located Appellant and read him his *Miranda* rights, which he waived by signing a *Miranda* rights waiver form. In his statement to police, Appellant said that on the day of the shooting, he and Markevius (Mark) Jackson were discussing "hitting a lick." They decided to go to Wal–Mart and drove there with Sharice Williams. When they arrived, Appellant got out of the car, walked down an aisle of the parking lot and tried to steal a purse from a woman. The woman would not give him her purse, so he hit her in the head with a gun and ran back to the car. Appellant stated that there were people standing in front of the car and he yelled at them, "y'all are gonna have to move." He stated that he did not want anyone to see the license plate of the car. Appellant stated that he tried to get the people to move away from the car by shooting his gun into the air. He remembered shooting the gun twice. Appellant said that it was not until later that he learned that one of the people in the crowd died from gunshot wounds.

Appellant got back into the car and he, Mark, and Sharice fled the scene. They drove around and unsuccessfully tried to buy gas with one of the robbery victim's stolen credit cards. Appellant was eventually dropped off at a friend's house and was picked up by his cousin and his brother. Their car was pulled over by police and Appellant was taken into custody.

On September 14, 2007, Appellant was charged in a criminal information with one count of capital murder in violation of Arkansas Code Annotated section 5–10–101 and one count of aggravated robbery in violation of Arkansas Code Annotated section 5–12–103. Appellant's date of birth is October 2, 1989, and he was seventeen years old at the time of his arrest. On January 28, 2008, Appellant filed a motion to be transferred to juvenile court pursuant to Arkansas Code Annotated section 9–27–318, which was denied on March 4, 2008. On March 18, 2008, Appellant filed a timely notice of appeal. This case was assumed by our court on March 13, 2009, because it involves significant public interest.

For his sole point on appeal, Appellant asserts that the circuit court erred in denying his motion to transfer to the juvenile division of the circuit court and denying his request to extend juvenile jurisdiction. Appellant moved under Arkansas Code Annotated section 9–27–318(e) to transfer his case to the juvenile division, arguing that he does not have a significant juvenile criminal record and that rehabilitation programs available through the juvenile court are a more appropriate sentence. In deciding the motion, the circuit court is to consider the following factors:

(1) The seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court;

(2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;

(3) Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;

(4) The culpability of the juvenile, including the level of planning and participation in the alleged offense;

(5) The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence;

(6) The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;

(7) Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday;

(8) Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;

(9) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and

(10) Any other factors deemed relevant by the judge.

Ark.Code Ann. § 9–27–318(g) (Repl.2009). Section 9–27–318(e) permits any party to move to transfer, and an order on a motion to transfer may be appealed by any party. *See R.M.W. v. State*, 375 Ark. 1, 289 S.W.3d 46 (2008). The circuit court shall make written findings on all of the factors set forth in subsection (g). Upon a finding by clear and convincing evidence that a case should be transferred to another division of the circuit court, the circuit court may do so. *See R.M.W., supra;* Ark.Code Ann. § 9–27–318(h)(2). Clear and convincing evidence is that degree of proof that will produce in the trier of fact a firm conviction as to the allegation sought to be established. *R.M.W., supra.* This court will not reverse the circuit court's decision unless it was clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.*

On appeal, Appellant disputes the circuit court's findings on the factors enumerated in 9–27–318(g). We will analyze Appellant's arguments as they pertain to specific statutory factors.[1] The first factor concerns the seriousness of the alleged offense and whether the protection of society requires prosecution as an adult. In its findings, the circuit court stated that the offenses of capital murder and aggravated robbery are serious offenses and that the protection of society requires prosecution as an extended juvenile jurisdiction offender or in circuit court. Appellant, relying on *Thompson v. State*, 330 Ark. 746, 958 S.W.2d 1 (1997), contends that there was insufficient evidence presented to establish the seriousness of the offense; that the circuit court may not base its refusal to transfer to juvenile court solely upon the allegations contained

---

1. It appears that Appellant does not dispute the circuit court's findings on the third, fifth, eighth, ninth, and tenth factors.

in the information; and that there must be some evidence to substantiate the serious and violent nature of the charges contained in the information.

We have held that a juvenile may be tried as an adult solely because of the serious and violent nature of the offense. *See Otis v. State*, 355 Ark. 590, 142 S.W.3d 615 (2004). Here, there was evidence presented at the hearing to substantiate the serious and violent nature of the charges contained in the information. In his own taped statement, Appellant stated that "[w]hen I got to the lady in the aisle, I tried to take her purse but she wouldn't let it go so I hit her with the gun and ran to the car." Detective Gravette testified that Appellant's story that he shot his gun in the air was inconsistent with the video-surveillance footage. The surveillance footage reveals that Appellant gets out of his car, walks down one aisle of the parking lot and then begins walking back up the next aisle. The robbery victim is walking toward Appellant. The video footage is consistent with Detective Gravette's testimony and Appellant's statement that he took the robbery victim's purse and hit her in the head with the gun. Appellant then runs back up the aisle toward the car. It appears from the video footage that Appellant reaches his car and turns around with his hand and arm extended toward a group of people walking down the aisle. He appears to advance toward them and then retreat. At this time, the shooting victim falls to the ground. Because there was evidence presented at the hearing to substantiate the serious and violent nature of the charges contained in the information, we hold that the circuit court did not err in its finding regarding this factor.

The second factor concerns whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner. In its order, the circuit court found that the victim was shot and killed in a parking lot at a Wal–Mart store. "The victim was walking towards the store and appears to have been shot while the defendant was attempting to flee after he had taken the purse from another victim and had hit her in the head with a gun." Appellant asserts that clear and convincing evidence does not exist to prove that the alleged offense was committed in such an aggressive, violent, premeditated, or willful manner such that the matter should be prosecuted in the criminal division of the circuit court. Based on Detective Gravette's testimony, Appellant's own statement, and the video footage discussed above, the circuit court did not err in its finding regarding this factor.

The fourth factor concerns the culpability of the juvenile, including the level of planning and participation in the alleged offense. The circuit court found that Appellant had acknowledged culpability and that there were two other people involved who had not been charged but who "may have known about and participated in the planning of the crime." Appellant asserts that the participation of Mark and Sharice and "the obvious lack of planning" that took place prior to the alleged events weighs against Appellant's culpability and level of planning. Appellant admitted in his statement that he and Mark planned to go out and "hit a lick" and that they decided to go to Wal–Mart. Based on his own statement, Appellant was the person who committed the robbery, hit the robbery victim in the head twice, and shot the gun while Mark and Sharice remained in the car. Even though there were two other people involved, his own statement along with the video footage establish his culpability.

The sixth factor concerns the sophistication or maturity of the juvenile as determined by consideration of the juve-

nile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult. Appellant asserts that the finding that he was sophisticated was not supported by convincing evidence, pointing to the testimony of his mother and forensic psychologist Dr. Ron Faupel. In its order, the circuit court acknowledged that Appellant has a "borderline intellectual function," but found that he was mature for his age because he had been out the night before the incident, made decisions regarding whether he would take medication that was prescribed to him, and acknowledged extensive drug and alcohol use. The circuit court obviously afforded greater weight to Appellant's own statement than to the testimony of Appellant's mother and Dr. Faupel. Credibility of witnesses is an issue for the finder of fact. *See R.M.W., supra.* On appeal, we have no means to assess witness credibility and may not act as the finder of fact. *Id.*

The seventh factor concerns whether there are facilities or programs available to the judge of the juvenile division that are likely to rehabilitate the juvenile prior to the expiration of the juvenile division's jurisdiction. The circuit court found that there were facilities and programs available to the court that would likely rehabilitate Appellant. Appellant seems to assert that based on this finding, the circuit court erred in finding clear and convincing evidence to try Appellant as an adult. However, we have held that the circuit court is not required to give equal weight to each of the statutory factors. *See Otis, supra.* As such, it is clear that the weight to be afforded to each statutory factor is within the discretion of the trial court. *Id.* We cannot say that the circuit court's order denying the motion to transfer was not supported by clear and convincing evidence solely because of its finding on this one factor.

Appellant also argues that the circuit court erred in denying his request to extend juvenile jurisdiction. Arkansas Code Annotated section 9–27–318(i) provides that, upon the finding by the criminal division of a circuit court that a juvenile should be transferred to the juvenile division, the criminal division may enter an order to transfer as an extended juvenile jurisdiction case. Here, the circuit court found that Appellant should *not* be transferred to the juvenile division. Therefore, extended juvenile jurisdiction is not applicable in this situation.

In sum, in light of the evidence presented at the hearing, Appellant has not met his burden of proving that the circuit court was clearly erroneous in denying the motion to transfer his case to juvenile court. We hold that there is clear and convincing evidence to support the circuit court's ruling. Accordingly, we affirm.

Affirmed.