2010 Ark. App. 744

**Robert NEAL, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 10–564.**

Court of Appeals of Arkansas.

Nov. 3, 2010.

---

**13.**  58 Ark. App. 35, 944 S.W.2d 867 (1997).

**14.**  *Neal, supra.*

Robert Ray Cortinez, The Cortinez Law Firm, Little Rock, for appellant.

Dustin McDaniel, Atty. Gen., Nicana C. Sherman, Asst. Atty. Gen., Little Rock, for appellee.

KAREN R. BAKER, Judge.

Appellant Robert Neal appeals from an order of the Jefferson County Circuit Court denying his motion to transfer his case to the juvenile division of the circuit court. He was charged by information on January 5, 2010, with thirteen counts of a class B felony terroristic act and one count of a class C felony criminal mischief for events occurring on November 5, 2009. Neal was seventeen years old at the time of the alleged crimes. On appeal, he asserts that the trial court's denial of his motion to transfer should be reversed because it (1) is founded on clearly erroneous findings of fact, and (2) does not properly apply Arkansas Code Annotated section 9–27–318(g) (Repl.2008). We affirm.

Detective Patrick Saffold of the Pine Bluff Police Department testified that several interrelated events occurred in close proximity to the events resulting in charges being filed against Neal. The police became involved on November 4, 2009, at approximately 9:00 p.m. when K.R. reported that his vehicle was stolen. K.R. stated that he heard a car horn honking, looked outside, and saw his vehicle being driven away. A passenger fired one round out of the window. Detective Saffold testi-

fied that K.R. implicated Neal in the theft, stating that he recognized Neal's Marquis car leaving the scene. Later that evening, K.R. shot a young man in the face.[1] Early in the morning hours of November 5, 2009, Detective Saffold said that the police department was notified that shots had been fired at the home of K.R. The investigation revealed that Lyndia Hardin, K.R.'s mother, and Huey Davis were sitting in a van when a group of boys approached them and shots were fired. Mr. Davis ascertained a license tag number from one of the vehicles involved, and the number returned to the Marquis vehicle driven by Neal.

Detective Saffold testified that Mr. Davis's van was hit twice and that police recovered thirteen spent shell casings from the scene: five .45 caliber; five .32 caliber; two .22 caliber; and, one .12 gauge. The weapons were later recovered in Neal's vehicle. Detective Saffold said that he interviewed Neal, in the presence of his mother, and Neal stated that he had been shot at by the occupant of a vehicle who he suspected was K.R. because the SUV was similar to one owned by K.R.'s mother. Upset over the shooting, Neal went to his house, got two .32–caliber handguns and a .12–gauge shotgun, rounded up some of his friends and went to K.R.'s house. The detective testified that Neal told him that his only involvement was driving the group to K.R.'s house and that he denied shooting a weapon; however, Neal refused to give him the full names of any of the others who had shot the weapons.

Neal's mother testified that she had never had any problems with him and that he had never used illegal drugs. She said that he had never had any problems with the law, and that he did not have a juvenile record. She stated that she purchased the Marquis for Neal and that on the night

before he was arrested, the vehicle was damaged by a bullet hole on the driver's side.

Dennis Pierce, a teacher at the Jefferson County Detention Center (JCDC), testified that in the four months that he had taught Neal, he behaved perfectly in his class. Mr. Pierce stated that he was cooperative, respectful, and showed concern for him when Mr. Pierce was out sick. He testified that he thought Neal would prosper from being permitted to stay in the juvenile system as opposed to being tried as an adult where, if found guilty, the conviction would be a part of his permanent record.

Amy Hopson, the school administrator and a teacher at the JCDC, testified that Neal had not shown any behavior problems and that he had performed his kitchen chores in a satisfactory manner. She stated that a lot of kids did not last very long doing kitchen work because it was hard and they had to answer to too many bosses. She said that the JCDC does not keep youth who are sentenced under the juvenile justice system usually more than two months past their eighteenth birthday because they are shipped to another facility.

The State introduced a disorderly conduct adjudication order entered against Neal It was filed on November 8, 2007, and evidenced that his parent/custodian was present at the hearing.

Neal testified that he believed K.R. shot at him on November 4, 2009, hitting his Marquis, because Neal told school officials that K.R. was selling marijuana. Shortly afterward, he decided to go to K.R.'s house and his friends, T.M. and Joseph Sledge, went with him. Neal said that he only wanted to have a fair fight and to shake hands at the end, but that Mr. Sledge

---

1. K.R. was subsequently charged with shooting D.D.

brought out of his house a .12 gauge and a .32–caliber weapon for protection. Neal testified that before they got to K.R.'s house, he received a telephone call stating that a friend, D.D., had been shot. Neal said that after they got to K.R.'s house, another car owned by D.D.'s cousin pulled up, and he and T.M. got inside the car to talk with the occupants about D.D. being shot. The occupants in the new on-the-scene vehicle stated that K.R. had shot D.D., and then they started shooting. Neal denied shooting, but stated that Mr. Sledge did fire his weapon from Neal's vehicle. Neal testified that he and T.M. got the guns from the occupants of the other vehicle and put them in his Marquis. Neal also stated that he knew there was no one inside the van parked at K.R.'s house because he and T.M. looked inside.

T.M., a detainee at the JCDC, testified that Mr. Sledge brought the weapons to Neal's car, and that Neal did not fire any shots when they were at K.R.'s house. He said that there was no reason for them to shoot at the van because there was not anyone in it. He stated that he got the guns from the occupants of the other vehicle who were shooting and put them in Neal's car.

In the order denying Neal's motion to transfer to juvenile court, the court found that committing a terroristic act was a serious offense and that Neal, and his friends had gathered weapons with the intent to seek out the rival group. The court said that although the testimony varied as to who actually contributed the guns and who actually fired them, the result was aggressive and violent. The court noted that while K.R.'s mother told police that she and her friend were in the van when the shots were fired, she did not appear to testify, and Neal said that no one was in the van. The order reflected that Neal admitted to being present during the inci-dent and that he had been found to be delinquent in Juvenile Court for disorderly conduct in November of 2007. Referring to his testimony, the trial court found that Neal was not mature and that his behavior since being at the JCDC was courteous with no behavior problems. The order said that one of Neal's teachers at the JCDC testified that he thought Neal would prosper in the extended juvenile justice program, that he was an average student, and that he had been made a trustee assigned to work in the kitchen. The court considered that Neal had acted in a group and that at least four different weapons were fired at the scene. Finally, the court said "the age of [Neal's] and the seriousness of the offenses charged are issues that understandably call out to be resolved in circuit court."

■ A prosecuting attorney has the discretion to charge a juvenile sixteen years of age or older in the juvenile or criminal division of circuit court if the juvenile has allegedly engaged in conduct that, if committed by an adult, would be a felony. Ark.Code Ann. § 9–27–318(c)(1) (Repl.2009). On the motion of the court or any party, the court in which the criminal charges have been filed shall conduct a hearing to determine whether to transfer the case to another division of circuit court having jurisdiction. Ark.Code Ann. § 9–27–318(e) (Repl.2009). The court shall order the case transferred to another division of circuit court only upon a finding by clear and convincing evidence that the case should be transferred. Ark.Code Ann. § 9–27–318(h)(2) (Repl.2009). Clear and convincing evidence is the degree of proof that will produce in the trier of fact a firm conviction as to the allegation sought to be established. *Richardson v. State*, 97 Ark. App. 52, 244 S.W.3d 736 (2006). We will not reverse a trial court's determination of whether to transfer a case unless that

decision is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. *Johnson v. State,* 356 Ark. 534, 157 S.W.3d 151 (2004).

Arkansas Code Annotated section 9–27–318(g) (Repl.2009) sets forth the factors the trial court must consider and make written findings on at a transfer hearing. Those factors are (1) the seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court; (2) whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner; (3) whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted; (4) the culpability of the juvenile, including the level of planning and participation in the alleged offense; (5) the previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether ⌊7the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence; (6) the sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult; (7) whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday; (8) whether the juvenile acted alone or was part of a group in the commission of the alleged offense; (9) written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and (10) any other factors deemed relevant by the judge. *Id.* A circuit court does not have to give equal weight to each factor. *Landrum v. State,* 63 Ark. App. 12, 971 S.W.2d 278 (1998) (citing *Jones v. State,* 332 Ark. 617, 967 S.W.2d 559 (1998)).

Neal challenges the finding that his participation in the offense was serious, aggressive, or dangerous. He states that the trial court should not have relied upon statements made by Lyndia Hardin and Huey Davis to the police, and testified to by Detective Saffold, because they were not called as witnesses and the legal inference is that their testimony would not have supported the State's case. The State correctly points out that this argument is not preserved for appeal because Neal did not present it to the trial court. Our law is well settled that we will not consider issues raised for the first time on appeal, even constitutional ones, because the trial court never had the opportunity to rule on them. *Thomas v. State,* 370 Ark. 70, 257 S.W.3d 92 (2007) (citing *Callaway v. State,* 368 Ark. 412, 246 S.W.3d 889 (2007)).

⌊8Neal seeks to minimize the seriousness of the events by arguing that the van was actually empty, thus, presumably no human life was in danger. Evidence presented at the hearing disputes this assertion, and credibility of witnesses is an issue for the fact-finder. *R.M.W. v. State,* 375 Ark. 1, 289 S.W.3d 46 (2008). On appeal, we have no means to assess witness credibility and may not act as the finder of fact. *Lofton v. State,* 2009 Ark. 341, 321 S.W.3d 255.

Next, Neal states that while thirteen shell casings were fired, only two hit the van, and there was no evidence regarding the target or end location of the additional shots. Neal offers no convincing argument or authority that the events were any less serious because of these assertions. We have held that when a party fails to cite to authority or fails to provide convinc-

ing argument, we will not consider the merits of the argument. *Springs v. State*, 368 Ark. 256, 244 S.W.3d 683 (2006).

Citing to *Thompson v. State*, 330 Ark. 746, 958 S.W.2d 1 (1997), Neal claims that there was no evidence presented that he shot a weapon, only that he drove the participants to K.R.'s home; therefore, his actions were not serious or violent. Contrary to Neal's assertion, in *Thompson*, our supreme court said that it is of no consequence that the juvenile did not personally use weapons because his association with the use of weapons in the course of the crime is sufficient to satisfy the violence criterion. *Id.* at 749, 958 S.W.2d at 2 (citing *Guy v. State*, 323 Ark. 649, 916 S.W.2d 760 (1996)). Neal's own testimony at the motion-to-transfer hearing established that he went to K.R.'s home to fight him after K.R. had shot at him, and Neal knew that guns were being taken by one of his passengers. We cannot say that the circuit court's finding on this point is clearly erroneous.

Finally, Neal asserts that the majority of the factors, including his age, considered by the trial court weighed more heavily in favor of granting the motion to transfer. The trial court is not required to give equal weight to each of the statutory factors, and it may use its discretion in deciding the weight to be afforded each factor. *Lofton v. State*, 2009 Ark. 341, 321 S.W.3d 255. Therefore, this argument is without merit.

The trial court's order denying Neal's motion to transfer is not clearly erroneous. Thus, we affirm.

VAUGHT, C.J., and GLOVER, J., agree.