
# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR–16–14

| | | |
|---|---|---|
| RAHEEM LINDSEY | | **Opinion Delivered** August 24, 2016 |
| | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SECOND DIVISION [NO. 60CR–14–3538] |
| V. | | |
| | | HONORABLE CHRISTOPHER CHARLES PIAZZA, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

**PHILLIP T. WHITEAKER, Judge**

The appellant, Raheem Lindsey, appeals an order from the Pulaski County Circuit Court denying his motion to transfer his charges to the juvenile division of Pulaski County Circuit Court. We find no error and affirm.

A prosecuting attorney has the discretion to charge a juvenile, sixteen years of age or older, in the juvenile or criminal division of circuit court if the juvenile has allegedly engaged in conduct that, if committed by an adult, would be a felony. Ark. Code Ann. § 9-27-318(c)(1) (Repl. 2015). Based on that discretion, and given the felony nature of the charges, the State charged Lindsey, along with a codefendant, T.S., in the criminal division of Pulaski County Circuit Court with thirteen felony counts: three counts of aggravated robbery, three counts of kidnapping, three counts of theft of property, three counts of aggravated assault,

and one count of rape.[1] The charges stemmed from a robbery of a Little Rock fast-food restaurant.

Lindsey filed a motion to transfer his charges to the juvenile division of Pulaski County Circuit Court and asked for his case to be designated as an extended juvenile jurisdiction (EJJ) case. When such a motion to transfer is requested, the court in which the criminal charges have been filed shall conduct a hearing to determine whether to transfer the case to another division of circuit court having jurisdiction. Ark. Code Ann. § 9-27-318(e). Here, the circuit court held a hearing pursuant to this statutory mandate.

At the hearing, Lindsey, as the moving party, bore the burden of proving by clear and convincing evidence that his case should be transferred. *Magana-Galdamez v. State*, 104 Ark. App. 280, 291 S.W.3d 203 (2009). The court shall order the case transferred to another division of circuit court only upon a finding by clear and convincing evidence that the case should be transferred. Ark. Code Ann. § 9-27-318(h)(2). Clear and convincing evidence is the degree of proof that will produce in the trier of fact a firm conviction as to the allegation sought to be established. *Neal v. State*, 2010 Ark. App. 744, at 6, 379 S.W.3d 634, 637. With the law in mind, we turn to the facts adduced at the juvenile-transfer hearing.

The circuit court heard testimony concerning the robbery of the fast-food restaurant from the three robbery victims—Erica, Christy, and Jeremy—who were all employees of the

---

[1] T.S. was not charged with rape; this count pertained solely to Lindsey. T.S. was also charged with one count of leaving the scene of an accident with injury; Lindsey was not charged with this offense. Lindsey and T.S. were both also subjected to firearm enhancements.

SLIP OPINION

restaurant. At the end of their shifts and at closing time, the victims finished cleaning the restaurant, clocked out, and were just leaving the restaurant shortly after midnight when they were approached by two masked, armed individuals. The armed individuals were later identified as Lindsey and T.S. Lindsey and T.S. ordered all three of the victims back into the restaurant at gunpoint. Inside the restaurant, Lindsey ordered Erica and Christy onto the kitchen floor and held them at gunpoint, while T.S. forced Jeremy to attempt to open the security box.

Jeremy informed both Lindsey and T.S. that the security box would not open because it was on a time lock. Lindsey and T.S. threatened to kill Jeremy if they did not get any money. While T.S. was forcing Jeremy to try to open the security box, Lindsey forced one of the women up from the floor and began pushing her toward the restaurant's bathroom. As he pointed his gun at her, he unzipped his pants and pulled out his penis. Lindsey ordered her to remove her pants and underwear and get down on all fours. After putting on a condom, Lindsey tried to vaginally rape her. When he was unsuccessful at penetrating her, he placed the gun to her forehead and ordered her to perform oral sex on him and threatened to kill all three victims if she did not. After he ejaculated, Lindsey took the woman's cell phone.

After the sexual assault, Lindsey and the woman returned to the kitchen area, where Jeremy's attempts at opening the security box had been unsuccessful. When all efforts to open the box had failed, including using tools to attempt to pry open the box and beating on the box, T.S. fired his gun at the safe to try to open it. The attempts to open the safe

lasted for a couple of hours, according to Jeremy. Before the assailants left, they took the keys to Jeremy's car. After Lindsey and T.S. left in Jeremy's car, the police were called and provided with the information about the robbery and a description of Jeremy's car, an apple-green Chevrolet Caprice.

Little Rock Police Detective Julio Gil responded to the scene of the robbery after receiving the call around 2:30 a.m. On his way there, he stopped at a car crash. The vehicle involved in the crash was Jeremy's car. It had been traveling eastbound at a high rate of speed in the westbound lane and had crashed head-on with another vehicle. Although no one remained in the vehicles by the time Gil arrived at the scene, Lindsey had been found stuck in the passenger seat of the eastbound car when police first arrived. Lindsey was taken into custody and transported to a local hospital. One gun was recovered from the crash scene, along with a cell phone.

In response to the testimony about the robbery, Lindsey offered several witnesses on his own behalf. Cristen Barnett, one of Lindsey's former teachers,[2] testified that Lindsey was "a playful student" who was "proficient" in academics and who had never gotten in major trouble or been "disruptive in a negative way" in her classroom. She expressed a hope that he could be capable of rehabilitation. Similarly, Ruth Nash testified that she had known Lindsey since middle school, and she described him as a "very mannerable, respectful young person" with whom she never had any problems. A neighbor, Harold Bell, testified that

_____

[2] Barnett taught T.S. and Lindsey in seventh grade in 2010 and 2011; the transfer hearing was held in 2015.

Lindsey "had a good attitude about life" and was "a really good kid." Bell said that Lindsey was trustworthy, polite, and respectful, and he said he believed Lindsey was capable of being rehabilitated.

Atondra Burks, Lindsey's mother, testified that Lindsey was seventeen at the time of the robbery.[3] She said he was a fair student who had never been arrested or in trouble before. She acknowledged that he had been in juvenile court for truancy around 2010, but she said he had never been adjudicated delinquent for anything. Burks said this incident was a "very, very big surprise to me," adding that she felt he must have been in the wrong place at the wrong time with the wrong people. Burks said she definitely believed Lindsey was capable of being rehabilitated and being a productive member of society.

Michael Lee was a friend of both Lindsey and T.S. from school and had been with the two on the afternoon and evening of the incident. Lee said that the three of them were talking in T.S.'s front yard, and T.S. gave him (Lee) and Lindsey some Sprite laced with Xanax. A car pulled up, and Lee heard T.S. and someone in the car "talking about a lick." Lee said that he told them he "ain't with it" and had T.S. drop him off at his house. On cross-examination, Lee repeated that T.S. had said that "he had a lick for us" and that he was "trying to hit a fast food restaurant." Lee heard T.S. and Lindsey talking back and forth about it, but he never heard Lindsey say that it was a bad idea.

---

[3] Lindsey's date of birth is December 20, 1996; the robbery occurred on August 30, 2014. Lindsey was therefore four months shy of his eighteenth birthday at the time of the events.

SLIP OPINION

Finally, Paul Woods, a juvenile probation officer for the Pulaski County Juvenile Court, testified about the law related to extended juvenile jurisdiction. He acknowledged the serious nature of the charges against Lindsey and T.S., neither of whom he knew, and noted that for a young person to receive services over the age of eighteen, he would have to be committed to the Division of Youth Services; moreover, there were no services outside of probation and random drug screening for juveniles over the age of eighteen.

Pursuant to Arkansas Code Annotated section 9–27–318(g), the circuit court shall consider all of the following factors in a transfer hearing:

(1) The seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court;

(2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;

(3) Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;

(4) The culpability of the juvenile, including the level of planning and participation in the alleged offense;

(5) The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against person or property, and any other previous history of antisocial behavior or patterns of physical violence;

(6) The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;

(7) Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday;

(8) Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;

(9) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and

(10) Any other factors deemed relevant by the judge.

The circuit court is required to make written findings on all of the above factors. Ark. Code Ann. § 9-27-318(h)(1). However, there is no requirement that proof be introduced against the juvenile on each factor, and the circuit court is not obligated to give equal weight to each of these factors in determining whether a case should be transferred. *D.D.R. v. State*, 2012 Ark. App. 328, at 3, 420 S.W.3d 494, 496. We will not reverse a circuit court's determination of whether to transfer a case unless that decision is clearly erroneous. *M.R.W. v. State*, 2012 Ark. App. 591, 424 S.W.3d 355. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. *Id*.

After considering all of the evidence, the circuit court denied Lindsey's motion to transfer the charges to juvenile court. Ruling from the bench, the court described the crimes as "heinous," noting that

> [t]here are firearms, there are threats of death, there's sexual assaults, there's a risk to other people on the roads. It's, I think it goes without saying that, that almost every one of the factors apply, plus it's, to me, the protection of society is the most important issue in this decision.

In its written findings of fact, the court found that all of the section 9-27-318(g) factors, save one,[4] weighed in favor of denying the motion to transfer to juvenile court.

On appeal, Lindsey argues that the circuit court gave no guidance or indication in its order as to how it weighed the statutory factors in deciding to deny the motion to transfer to juvenile court. He points out that the court found one factor weighing in favor of transfer to juvenile court—his previous history—and he argues that, in the absence of knowing how much weight was assigned to this factor, remand is appropriate for the court to make further findings.

In making this argument, Lindsey relies exclusively on *Z.T. v. State*, 2015 Ark. App. 282. In that case, Z.T. had been charged with aggravated robbery and theft of property in circuit court. In denying his motion to transfer to juvenile court, the circuit court made written findings on all of the necessary factors, determining that each of the factors weighed in favor of denying transfer. On appeal, however, this court found that the circuit court's findings with respect to three factors were factually inconsistent with the evidence, and that those three factors weighed in favor of transfer. The court held as follows:

> It is . . . true that the trial court is not required to give equal weight to each of the factors. [Citation omitted.] However, in the present matter, we are unable to tell how much weight the trial court gave to the seriousness and violent nature of the offense, and how much weight it gave to its findings regarding the three factors that were inconsistent with the evidence in arriving at its decision to deny the transfer.

---

[4] With respect to Lindsey's history, the court found that "[t]he previous history of the juvenile justifies prosecution in the Juvenile Division of Circuit Court as an extended juvenile jurisdiction."

*Z.T.*, 2015 Ark. App. 282, at 8. As such, this court remanded the case to the circuit court with instructions to reconsider the transfer motion, "giving proper consideration to the proof, or lack thereof, bearing on each of the statutory factors." *Id*.

On appeal in the instant case, Lindsey does not specifically challenge the circuit court's factual findings regarding the enumerated factors. Instead, he argues only that *Z.T.* requires remand so that the circuit court "can explain his findings." The present case, however, is obviously distinguishable from *Z.T.* The distinction lies in the fact that the circuit court's findings were held to be contrary to the evidence in *Z.T.*, and this court could not discern how much weight was assigned to the factually erroneous findings.

In the present case, we cannot say—and Lindsey does not specifically argue—that any of the circuit court's factual findings on the statutory factors were clearly erroneous. Although the court found that the previous-history factor weighed in favor of transfer, the court was not required to assign equal weight to that factor and was entitled to use its discretion in deciding the weight to be afforded each factor. *Kiser v. State*, 2016 Ark. App. 198, at 10, 487 S.W.3d 374, 380. The court stressed the serious nature of the offenses and found that the protection of society outweighed the one factor that militated toward transfer. That the court did not weigh one factor the way Lindsey wanted it weighed does not make the court's decision clearly erroneous, nor does it necessitate remand.

Finally, Lindsey argues that he should have been adjudicated pursuant to EJJ. This court has explained, however, that there can be no EJJ designation unless the case either is already in the juvenile division or is transferred to the juvenile division. *J.S. v. State*, 2009

9

Ark. App. 710, at 5, 372 S.W.3d 370, 373. Arkansas Code Annotated section 9–27–501(a) provides that the State "may request an extended juvenile jurisdiction designation *in a delinquency petition* or file a separate motion" if the case is appropriate for transfer. (Emphasis added.) Likewise, Arkansas Code Annotated section 9-27–503(e) provides that "[i]f the court denies the request for [EJJ], the court shall enter its written findings and proceed with the case *as a delinquency proceeding*." (Emphasis added.) Thus, as noted by this court in *J.S.*, *supra*, these statutes "presuppose[ ] that, before a request for designation is considered, the case is [already] in the juvenile division." *J.S.*, 2009 Ark. App. 710, at 5, 372 S.W.3d at 373; *see also Lofton v. State*, 2009 Ark. 341, 321 S.W.3d 255 (holding that, because the circuit court denied request to be tried in juvenile court, EJJ was not applicable).

In this case, the circuit court denied Lindsey's motion to transfer his case to the juvenile division. Any argument he makes with respect to an EJJ designation is, therefore, without merit.

Affirmed.

KINARD and HIXSON, JJ., agree.

*Stuart Vess*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Kathryn Henry*, Ass't Att'y Gen., for appellee.