Cite as 2021 Ark. App. 467

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR–21–103

| | |
|---|---|
| JUVELYE LOPEZ<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered** December 1, 2021<br><br>APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT<br>[NO. 26CR-20-347]<br><br>HONORABLE MARCIA R. HEARNSBERGER, JUDGE<br><br>AFFIRMED IN PART; DISMISSED IN PART |

## BRANDON J. HARRISON, Chief Judge

On 18 June 2020, the State filed a criminal information in the Garland County Circuit Court charging fourteen-year-old Juvelye Lopez with three counts of aggravated robbery, three counts of aggravated assault, one count of theft of property over $5,000, and one count of theft by receiving over $1,000. Lopez appeals the denial of his motion to transfer his case to the juvenile division of the circuit court. We affirm the denial of the motion to transfer the aggravated-robbery charges.

We also dismiss in part. Lopez was originally charged as an adult with theft, theft by receiving, and aggravated assault in the criminal division of the circuit court, but the criminal division of the circuit court lacks statutory jurisdiction over a person under fifteen years old in these circumstances. Because the circuit court in this case lacked jurisdiction, so do we.

*Butler v. State*, 324 Ark. 476, 922 S.W.2d 685 (1996). We therefore dismiss the pending aggravated-assault, theft, and theft-by-receiving charges.

I. *Overview*

The following facts are taken from the affidavit supporting Lopez's arrest and the witnesses' testimony during the juvenile-transfer hearing. The State criminally charged Lopez related to a series of carjackings that started in Little Rock on the night of 15 June 2020. The events continued in Hot Springs in the early morning hours of 16 June 2020. At approximately 9:45 p.m. on June 15, the Garland County Sheriff's Office received a report that a family traveling on Park Avenue near its intersection with Bud McKinley encountered a stopped vehicle in their lane blocking their passage. A young male passenger got out of the stopped vehicle and pointed a gun at Summer Dearmon and her passengers. Dearmon managed to put her car in reverse and then pull forward quickly, striking a culvert. The suspects drove away.

Next, around 10:11 p.m., La Verna Warner reported that her 2016 Toyota Camry had been stolen. Warner had been driving on Park Avenue when she noticed a red car in her lane driving toward her. The red car, which investigators later identified as a Chevrolet Aveo that had been stolen in Little Rock earlier that day, forced Warner off the road. Three young males got out of the car, pointed a gun at Warner, told her to get out of her Toyota Camry, which she did, and then ordered her to get inside the Chevy Aveo. The suspects drove away in Warner's Toyota Camry.

At approximately 10:36 p.m., Katherine Peters told police officers that she had been driving on Park Avenue, around the 3600 block, when a small passenger car swerved into

2

her lane. Peters stopped her car. Three people from the other car got out, and one pointed a gun at her. Peters swerved, drove around the other car, and went directly to the Hot Springs Police Department to file a report.

Approximately twenty minutes later, a Saline County deputy spotted a Toyota Camry matching the description of the one stolen from Warner. When the deputy turned around to read the license plate on the Camry, the car began accelerating at a high rate of speed. It eventually crashed near the intersection of Highway 70 East and Interstate 30. The deputy said that he saw "three Hispanic males, [who] looked very young, get of the vehicle and run into the woods." Investigators were not able to find the suspects in the woods.

A few hours later, around 2:00 a.m. on June 16, Saline County deputies located two Hispanic juveniles at a truck stop approximately ten miles from the crash site. The teenagers tried to hide but were eventually arrested. Investigator Charlie Mowery interviewed the two teenagers, one of whom identified Lopez as a third participant. The teenager said that Lopez was the driver and "basically the leader of the group." He said that Lopez had the firearm after the crash, that Lopez had pointed the gun twice, and that Lopez had driven the stolen cars. But the other juvenile said that no gun was involved and did not identify Lopez as a perpetrator. A surveillance video showed Lopez in close proximity to one of the juveniles and the stolen Camry at a gas station shortly before the crash.

On June 17, Lopez's mother and sister identified him from a photograph taken from the gas station's high-definition surveillance video. Lopez's mother consented to a search of her Little Rock home, and there the investigators found a hoodie and shoes that matched

what Lopez had been wearing in the surveillance video. The gun was never recovered. Investigators had "no idea" how Lopez got back to Little Rock after the car crash.

According to the investigators, the victims could not give an exact description of the perpetrators, only that they appeared to be younger males with masks covering their faces. The victims gave some description of the clothing the perpetrators were wearing, and all victims said that there had been a handgun involved. But it was not clear from the victims' accounts which of the three suspects handled the gun. There were no physical injuries to any of the victims.

## II. *The Juvenile-Transfer Hearing and Related Order*

On 23 June 2020, Lopez filed a motion to transfer his case to juvenile court. Arkansas Code Annotated section 9–27–318(g) (Repl. 2020) states that in deciding a motion to transfer, the circuit court is to consider the following factors:

(1) The seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court;

(2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;

(3) Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;

(4) The culpability of the juvenile, including the level of planning and participation in the alleged offense;

(5) The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence;

(6) The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;

(7) Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday;

(8) Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;

(9) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and

(10) Any other factors deemed relevant by the judge.

The circuit court is required to make written findings on all the above factors. Ark. Code Ann. § 9-27-318(h)(1). But there is no requirement that proof be introduced against the juvenile on each factor, and the circuit court is not obligated to give equal weight to each of these factors in determining whether a case should be transferred. *D.D.R. v. State*, 2012 Ark. App. 329, 420 S.W.3d 494.

On 31 August 2020, the circuit court held a hearing on Lopez's motion to transfer; and the hearing continued on 15 October, 17 November, and 15 December 2020; and 19 January 2021. A certified copy of adjudication and disposition orders entered in the juvenile division of the Pulaski County Circuit Court in case numbers 60JV-20-200, 60JV-19-1231, and 60JV-20-136 were entered as evidence during the transfer hearing. According to the certified disposition sheets entered as part of the State's exhibits, Lopez was adjudicated delinquent by the Pulaski County Circuit Court, juvenile division in March 2020 and placed on probation for nine months for two counts of theft of property.

5

Kevin Hoffman, chief deputy at the Garland County Juvenile Court, explained that the juvenile-probation department could offer services to Lopez like supervision, electronic monitoring, and a residential program at Ouachita Children's Center as well as other community-based programs. He described several options that are not available to juveniles in the adult division of circuit court including "Act II," which is an education program set up like a college where the juvenile can pick four blocks of classes Monday through Thursday and tutoring in the summer. The juvenile division could also offer counseling, a student civilian training program, programs offered by the Division of Youth Services, and a local juvenile-detention facility. Hoffman, however, had not seen or assessed Lopez to determine his eligibility for services but acknowledged that as a fourteen-year-old charged with an aggravated felony, Lopez was eligible for extended juvenile jurisdiction (EJJ). This meant that Lopez could receive rehabilitative services through the EJJ program if the court so chose. Hoffman offered no opinion on whether Lopez would be successful in any of the juvenile programs. He did acknowledge that Lopez's codefendants had been transferred to juvenile court.

Kelly Guerrero, Lopez's aunt, testified that Lopez's father died in November 2019 and that after his father's death, Lopez had started getting into trouble and doing things for attention. She did not think Lopez had received counseling after his father died, and she thought that counseling would help him. Kelly said that Lopez sometimes helped her with repairs and cleaning. She did not think Lopez's mother kept any firearms in the house, and she said that his mother provided for all Lopez's basic necessities like food and clothing.

6

Maria Montelena Sigaran, Lopez's mother, testified that Lopez lives at home with her and his brother and two sisters. She said that she works with her sister Kelly sometimes but is also employed as a cleaner for an apartment complex. Lopez is enrolled in virtual school and struggles in some classes with his grades. Lopez had gotten in trouble in Pulaski County for stealing a car along with his older brother. According to Maria, Lopez had stayed in contact with his juvenile probation officer every fifteen days since being placed on probation. Maria told the court that she thought Lopez had been getting better because of the communication with the probation officer and because he had been seeing a therapist who has "really helped him a lot."

On 22 January 2021, the circuit court entered a written order denying Lopez's motion to transfer. Lopez has appealed this order. The order makes the following findings:

1. The Defendant's date of birth is March 24, 2006. He was fourteen (14) years old on the date of the alleged offenses.

2. Defendant is charged with three counts of Aggravated Robbery, three counts of Aggravated Assault, Theft of Property over $5,000 and Theft by Receiving over $1,000 for incidents, which occurred June 15, 2020, between 9:00 and 11:00 p.m. in Hot Springs, Arkansas.

3. It is alleged that the Defendant and at least two other males carjacked or attempted to carjack three different vehicles using a firearm. They were unsuccessful in two attempts. They were successful in taking one of the vehicles, which they wrecked in a high-speed chase with police on Highway 70E in Saline County and fled the scene. Defendant was the driver of the vehicle used in the carjacking and possessed the firearm used in the carjacking.

4. Defendant is a juvenile fourteen (14) years old when he engaged in conduct that, if committed by an adult, would be Aggravated Robbery A.C.A. 5-12-202. A.C.A. 9-27-318(c)(2)(D) allows the State to choose to file this case into the criminal division of Circuit Court. A.C.A. 9-27-318(d) allows the prosecuting attorney to file other charges that arise out of the same act or course of conduct in the same division of the circuit court case.

7

5. A.C.A. 9-27-318(g) sets out the factors the Court must consider at the transfer hearing. The Court considered each of these factors and makes the following findings:

(1) *The seriousness of the alleged offense and whether the protection of society requires prosecution in the [criminal] division of Circuit Court.* There is no doubt the offense of Aggravated Robbery, a Class Y felony, is considered one of the most serious crimes in our society. In this case, Defendant is alleged to have stopped three different motorists in our county and threatened them face to face with a gun in an attempt to steal their cars. Defendant did not know the random woman victims. Defendant was driving a stolen car at the time of the crime. Defendant does not reside in Hot Springs, Arkansas or have family members that do so. This is a crime involving forethought, purposeful action, and use of a firearm posing great risk of serious physical injury to all present.

(2) *Whether the alleged offense was committed in an aggressive, violent, premediated and willful manner.* Defendant stole a Chevrolet Aveo in Little Rock at gun point. He and two others drove to Hot Springs and pulled that car in front of the victim forcing her to stop. They wore masks. Defendant got out of his vehicle, pointed a gun at the victim, told her to get out of the car, which she did, then told her to get in the car he was driving and he took the victim's car. These facts support a finding of premeditated, willful, violent, and aggressive actions by the Defendant.

(3) *Whether the offense was against a person or property with greater weight being given to offenses against person, especially if personal injury results.* Defendant directed violence against an innocent woman simply driving down the street. Defendant left the victim alone on the street in the dark with his abandoned stolen car. Defendant attempted the same act two other times this same evening. In one incident, Defendant pointed the gun out of the car at first, the victim started to back up, Defendant exited the vehicle and pointed the gun again but the victim was able to drive off striking a culvert. This victim had two young people and an infant with her in the car and drove to the Hot Springs Police Department to report the incident. In the third incident, the victim drove away from Defendant but called the Police Department and reported the attempted carjacking.

(4) *The culpability of the juvenile including the level of planning and participation in the alleged offense.* A statement taken from one of the juveniles involved in the crimes, identified Defendant as the leader of the group; that he had been driving all the cars that they had taken and that he did have a firearm.

(5) *The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against person or property, and any other previous history of antisocial behavior or patterns of physical violence.* Defendant's prior adjudication in Pulaski County are 60 JV-19-1231 and 60 JV-20-200. In these cases, Defendant was placed on probation on March 11, 2020, in Pulaski County, Arkansas for the offenses of theft of property, a class B felony, theft of property, a class C felony and breaking or entering, a class D felony. Defendant was on probation when he committed these offenses. His rules of probation ordered a curfew of nine (9) p.m. every night and Defendant was not allowed to possess any firearms or other deadly weapons. Defendant's mother testified Defendant had been in trouble in Little Rock for stealing cars in 2019 and in 2020.

(6) *The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living or desire to be treated as an adult.* Defendant lives in Little Rock with his mom, brother and sisters. His father passed away. Defendant's 15-year-old brother, Carlos has also been in juvenile court because of committing crimes with Defendant. Investigators gave Defendant the opportunity to talk about what occurred during these incidents and he refused to do so. Defendant did not testify and the court has no other evidence from which to determine his sophistication or maturity.

(7) *Whether there are facilities or programs available to the judge of the juvenile court that are likely to rehabilitate the juvenile before the expiration of his twenty-first birthday.* Since 2019, Defendant has received some services from the Pulaski County Juvenile Court while on probation. While on probation, he committed these carjacking crimes. He violated the rules of his probation given to him three (3) months before the date of these crimes. Kevin Hoffman, Chief Deputy Intake Officer of the Garland County Juvenile Court, described facilities and programs available in Garland County. Deputy Hoffman described services similar to those already offered to Defendant in Pulaski County and Defendant does not reside in Garland County.

(8) *Whether the juvenile acted alone or was part of a group in the commission of the alleged offense.* Defendant acted with at least two other individuals at the time of the offense.

(9) *Written reports and other materials relating to the juvenile's mental, physical, educational, and social history.* The court received no written reports or other materials concerning his mental, physical or social history. Defendant is attending virtual school now and he occasionally works with his Aunt doing remodeling jobs.

9

(10) *Any other factors deemed relevant by the judge.* Approximately thirty minutes after Defendant and the others stole the victim's car in Hot Springs, Defendant and one (1) other Hispanic male were seen on video getting out of the carjacked vehicle at a gas station. As they pulled out of the gas station, a Saline County Deputy saw them and turned around to follow them on Hwy 70 E. The carjacked vehicle sped off and when the Saline County Deputy caught up to it at I–30 it had wrecked and three Hispanic males were getting out of the car and fled on foot. Two of the individuals were later found at a truck stop approximately ten (10) miles away from the accident. Deputies did not find Defendant near the accident even with the help of canines. The gas station's video identifies Defendant emerging from the stolen car and clearly shows his clothing. Detectives took a photo of the surveillance and sent this to the Little Rock Police Department. Little Rock police took the photo to Defendant's residence and showed it to his mother and sister who identified him in it. Deputies found the clothing Defendant was wearing in the pictures in his home.

6. The Court finds by clear and convincing evidence Defendant's case should be adjudicated in the criminal division of Circuit Court as filed. Therefore, Defendant's Motion to Transfer to Juvenile Court is denied.

III. *The Aggravated-Robbery Charges Belong in the Criminal Division of the Circuit Court*

Under Arkansas law, a prosecuting attorney has discretion to file charges in the criminal division of the circuit court when a case involves a juvenile fourteen years of age and the alleged act constitutes aggravated robbery. Ark. Code Ann. § 9-27-318(c)(2)(D). On the motion of the court or any party, the court in which the criminal charges have been filed shall conduct a hearing to determine whether to transfer the case to another division of circuit court having jurisdiction. Ark. Code Ann. § 9-27-318(e). In deciding whether to retain jurisdiction of the case, the circuit court must consider the seriousness of the offense, whether the offense is part of a repetitive pattern of adjudicated offenses, and the juvenile's prospects for rehabilitation. *Holmes v. State*, 322 Ark. 574, 911 S.W.2d 256 (1995). The circuit court shall order the case transferred to another division of circuit court only upon a finding by clear and convincing evidence that the case should be transferred.

10

Ark. Code Ann. § 9-27-318(h)(2). Clear and convincing evidence is that degree of proof that will produce in the trier of fact a firm conviction as to the allegation sought to be established. *McClure v. State*, 328 Ark. 35, 942 S.W.2d 243 (1997). The standard of review in a juvenile-transfer case is whether the circuit court's denial of the motion to transfer was clearly erroneous. *Burnette v. State*, 2021 Ark. App. 223, 625 S.W.3d 382. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Gibson v. State*, 2020 Ark. App. 542. As we have held many times, appellate courts will not reweigh the evidence presented to the circuit court. *Id.*

## A. Weighing the Factors

Here, Lopez argues that the circuit court clearly erred in finding that the ten factors under the statute weighed in favor of a criminal prosecution. He acknowledges that the first three factors clearly weigh in favor of the State and against him, but he says that factors four through eight favor transfer. He argues that the lack of violence in his previous adjudication for theft of property, the death and absence of his father, and the lack of evidence that he was exceptionally sophisticated or mature or that he wanted to be treated as an adult weighed in favor of granting his motion. Moreover, rehabilitative services were available for him in juvenile court. Lopez also argues that had he acted alone, his culpability would be greater and that the crimes were committed as a group weighed in favor of the juvenile court deciding the case. He contends that he was not found with the two other codefendants, that no one could explain how he got back to Little Rock, that when his

11

home was searched no firearm was recovered, and that none of the victims were able to identify the perpetrators.

Given the record and our standard of review, the circuit court's decision to keep the aggravated-robbery charges in the criminal division was not clearly erroneous. The first factor to be considered by the circuit court concerns the serious nature of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court. Ark. Code Ann. § 9-27-318(g)(1). Our supreme court has interpreted this subsection to mean that a juvenile may be tried as an adult solely because of the serious and violent nature of the offense, and we have said that a single finding by the circuit court under this factor alone is sufficient evidence to support a transfer. *E.g.*, *Donson v. State*, 2019 Ark. App. 459, 588 S.W.3d 84 (citing *Otis v. State*, 355 Ark. 590, 142 S.W.3d 615 (2004)). The State established some evidence that Lopez engaged in conduct that, if committed by an adult, would be aggravated robbery. After hearing the testimony, the circuit court found that Lopez was the person who pointed the gun on more than one occasion, and he was the leader of the group. The court considered this and other evidence presented at the hearing, weighed it, and made findings in a written order as to each statutory factor. We are not left with a firm and definite conviction that a mistake was made.

B. Inconsistencies in the Court's Written Findings

Next, Lopez contends that the circuit court's written findings were inconsistent with the evidence presented during the transfer hearing. Citing *Spears v. State*, 2019 Ark. App. 576, 591 S.W.3d 803, Lopez argues that since some of the court's findings were inconsistent with the proof presented, the transfer order must be reversed and remanded for

reconsideration. Lopez says that the court's following factual findings are unsupported by the record:

- "Defendant stole a Chevrolet Aveo in Little Rock at gun point" and "got out of his vehicle, pointed a gun at the victim forcing her to stop."

- "In this case, Defendant is alleged to have stopped three different motorists in our county and threatened them face to face with a gun in an attempt to steal their cars."

- "Kevin Hoffman, Chief Deputy Intake Officer of the Garland County Juvenile Court, described facilities and programs available in Garland County. Deputy Hoffman described services similar to those already offered to Defendant in Pulaski County and Defendant does not reside in Garland County."

In response, the State cites *Hubbard v. State*, 2017 Ark. App. 636, 535 S.W.3d 669, and argues that because Lopez failed to timely request corrections to the court's written findings or object to them, we cannot consider his argument on appeal. Alternatively, the State says that the circuit court did not clearly err in making these written findings.

In *Hubbard*, the juvenile argued on appeal that the circuit court failed to make written findings addressing each factor under section 9–27–318(g). We said that we would not address the "technical, statutory noncompliance of a circuit court's order when the [juvenile] failed to make a timely request or objection that would have enabled the circuit court to correct the alleged deficiency." *Id.* at 6, 535 S.W.3d at 673. Here, however, Lopez's inconsistent-evidence arguments are not the type of "technical, statutory noncompliance" arguments that were made in *Hubbard*. Lopez's arguments are closer to the factual-inaccuracy arguments that this court addressed in *Spears v. State*, 2019 Ark. App. 576, 591 S.W.3d 803.

13

In *Spears*, some of the written findings in the circuit court's order denying the motion to transfer were unsupported by the evidence. Because we were "unable to tell how much weight the [circuit] court gave to its accurate findings and how much it gave to its findings that were inconsistent with the proof at the [transfer] hearing," we reversed and remanded for reconsideration of the evidence by the circuit court. *Id.* at 14, 591 S.W.3d at 811. The *Spears* opinion does not indicate whether Spears raised his inconsistent-evidence arguments in the circuit court before they were presented to us on appeal. But no rule or caselaw we have found requires a posttrial motion or objection after a written order denying a juvenile transfer is entered before an appellant can contest factual inaccuracies in the order itself. We therefore take the *Spears* approach and reach the merit of Lopez's appellate argument.

First, we acknowledge that there is some inconsistency between the evidence and the court's written findings. Lopez is correct that there was no testimony about the circumstances surrounding the theft of the Chevrolet Aveo in Little Rock. He is also correct that there was no testimony that he "got out of his vehicle, pointed a gun at the victim forcing her to stop" *as it relates to the Aveo*. There was, however, testimony that Lopez got out of a stolen Chevy Aveo, pointed a gun at La Verna Warner, and stole her Toyota Camry.

On the court's factual assertion about Lopez pointing a gun at three different motorists, Lopez is correct that there was no direct testimony that he pointed a gun three times. However, this case was presented as an accomplice case; the State did not contend that Lopez acted alone. While there was conflicting evidence on which juvenile had the gun and when, the record supports the court's finding that the "[d]efendant is alleged to

14

have stopped three different motorists in our county and threatened them face to face with a gun in an attempt to steal their cars" when we apply principles of accomplice liability—which means someone can be charged with a crime he never committed as long as he helped or influenced the perpetrator. It does not matter that the testimony fails to demonstrate that Lopez pointed a gun at three separate motorists. That is so because he could be criminally liable for another's act of pointing the gun under these circumstances.

The third factual inaccuracy or inconsistency that Lopez argues relates to Deputy Hoffman's testimony. While Deputy Hoffman described services available to Lopez in the Garland County juvenile system, there was no testimony about whether similar services were available to Lopez in Pulaski County. Lopez's certified juvenile records, however, revealed some of the services provided to him in Pulaski County in his previous juvenile cases. Lopez's mother also testified about the probation services that were provided to Lopez in Little Rock and the "helpful" therapy that Lopez had received as part of his previous delinquency case in Pulaski County. It is a fair inference from the evidence that there was not likely to be a substantial difference in services available for juveniles in Garland County versus juveniles in Pulaski County.

In short, none of the "inconsistent" factual findings that Lopez argues here are material enough to warrant a reversal of the transfer order. Lopez's case is unlike *Spears*; in *Spears*, the inaccurate findings were potentially material to the ultimate decision to deny the transfer. Here, the written order provided enough detail and facts to support the court's conclusion that Lopez's request to transfer his criminal case to juvenile court should be denied. Consequently, we affirm on this point.

C. Extended Juvenile Jurisdiction

Lopez makes a passing point in his brief about the court erring because it did not extend juvenile jurisdiction. But he never received a ruling on this request from the circuit court, and more importantly, there can be no EJJ designation unless the case is already in the juvenile division or is transferred to the juvenile division. *See* Ark. Code Ann. § 9-27-503(e) (Repl. 2020); *see also Lindsey v. State*, 2016 Ark. App. 355, 498 S.W.3d 336. Because the case is not already in the Garland County Circuit Court's juvenile division, and the criminal division has denied Lopez's transfer motion to juvenile division, EJJ is not applicable.

IV. *Because the Circuit Court Had No Jurisdiction, the Other Charges Are Dismissed*

The State acknowledges that it could not charge Lopez with three counts of aggravated assault, one count of theft of property over $5,000, and one count of theft by receiving over $1,000 in the criminal division of the circuit court without first charging him with these offenses in the juvenile division. This is because these lesser offenses are not among the enumerated serious offenses set forth in Arkansas Code Annotated section 9-27-318(c)(2)(A)−(G) that allow the prosecutor discretion to charge a fourteen-year-old juvenile as an adult in the criminal division of circuit court. *See Butler v. State*, 324 Ark. 476, 922 S.W.2d 685 (1996). While the circuit court was partially correct when it stated in its written order that "A.C.A. 9-27-318(d) allows the prosecuting attorney to file other charges that arise out of the same act or course of conduct in the same division of the circuit court case," the rest of subsection (d) states that the other charges may be filed only "if, after a hearing before the juvenile division of circuit court, a transfer is so ordered." Ark. Code Ann. § 9-

16

27–318(d). On this record, there is no evidence that the juvenile division ordered a transfer of these charges to the criminal division. The State concedes that we can dismiss these charges, and we do.

## V. *Conclusion*

The circuit court's denial of Lopez's request to transfer the aggravated-robbery offenses to the juvenile division is affirmed; but the aggravated-assault, theft, and theft-by-receiving charges are dismissed for lack of jurisdiction in the criminal division of the circuit court.

Affirmed in part; dismissed in part.

HIXSON and MURPHY, JJ., agree.

*Robert M. "Robby" Golden*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jason Michael Johnson*, Ass't Att'y Gen., for appellee.

17