Cite as 2024 Ark. App. 58

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR-23-232

| | | |
|---|---|---|
| | | Opinion Delivered January 31, 2024 |
| JOSEPH DICKERSON | | |
| | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTH DIVISION [NO. 60CR-22-2334] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE KAREN D. WHATLEY, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

## N. MARK KLAPPENBACH, Judge

Joseph Dickerson appeals from the order of the Pulaski County Circuit Court denying his motion to transfer his criminal charges to the juvenile division of the Pulaski County Circuit Court. We affirm.

A prosecuting attorney has the discretion to charge a juvenile, sixteen years of age or older, in the juvenile or criminal division of circuit court if the juvenile has allegedly engaged in conduct that, if committed by an adult, would be a felony. Ark. Code Ann. § 9-27-318(c)(1) (Repl. 2020). Pursuant to that statute, the State charged Dickerson, along with two codefendants, in the criminal division of the Pulaski County Circuit Court with two felony counts: first-degree murder and terroristic act. Following Dickerson's motion to transfer his charges to the juvenile division, the court conducted a hearing in which Dickerson bore the

burden of proving by clear and convincing evidence that his case should be transferred. *Lindsey v. State*, 2016 Ark. App. 355, 498 S.W.3d 336. Clear and convincing evidence is the degree of proof that will produce in the trier of fact a firm conviction as to the allegation sought to be established. *Id.*

Detective Jeff Coburn of the North Little Rock Police Department testified regarding the shooting death of Jaylen Brown, which led to Dickerson's charges. On March 31, 2022, sixteen-year-old Dickerson, Brown, and three other teenagers rode together in a car to a residence in North Little Rock where, according to one of the participants, they intended to conduct a "drill." Coburn said that a "drill" was a shooting at an occupied residence. Codefendant Cortlen Waters told detectives that the group first traveled to Alexander to obtain ammunition for the three guns they possessed before driving to the home in North Little Rock where they believed someone responsible for shooting Waters the previous year was inside. At about 4:30 a.m., the group parked on the street, everyone but the driver got out, and they fired shots at the house and a vehicle.

Brown was found in the street with a gunshot wound to the back of his head, and twenty-three expended shell casings were found at the scene. Waters told detectives that he turned and saw Brown on the ground bleeding and Dickerson standing beside him. According to Waters, during the car ride, Dickerson had argued with Brown over who was going to have possession of one of the guns after Brown allegedly mishandled a gun, and Dickerson attempted to take possession of it. However, no one alleged that Dickerson had fired one of the three handguns possessed by the group, and the gun possessed by Brown in

the car was found underneath him at the scene. Detective Coburn testified that Brown's shooting was consistent with "friendly fire," perhaps from the third codefendant firing from the other side of the car, but he had not been able to prove it. Dickerson had claimed affiliation with a gang in online messages. Three adults and one child were inside the house the group shot at.

Dickerson's father testified that Dickerson had snuck out of the house on the night of the shooting. He testified that since bonding out of jail, Dickerson had been "scared straight" and had been focusing on his schoolwork and bringing up his grades. He reported that Dickerson had quit using social media and was dealing with reality and no longer living in a dream world.

Jennifer Baptist, a juvenile probation officer with Pulaski County Juvenile Court, testified that Dickerson was on probation for misdemeanor theft by receiving committed in February 2022. At the time of the hearing, Dickerson had been on probation for a little over three months and had done "excellent." In addition to theft by receiving, he was initially also charged with possession of a controlled substance and obstructing governmental operations, but those charges were nolle prossed according to a negotiated agreement. At the time of the shooting, Dickerson had not yet been placed on probation, but he was on "conditions" for the theft by receiving. The "conditions" included a curfew and an order to obey the law. Dickerson had prior intakes that were dismissed in 2018 for disorderly conduct and in 2021 for fleeing. Brooke Digby, the juvenile ombudsman at the Public Defender Commission, testified regarding the resources available for rehabilitation in juvenile court,

including resources for individuals aged eighteen to twenty-one. At the time of the hearing, Dickerson was seventeen years old.

Pursuant to Arkansas Code Annotated section 9-27-318(g), the circuit court shall consider all of the following factors in a transfer hearing:

(1) The seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court;

(2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;

(3) Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;

(4) The culpability of the juvenile, including the level of planning and participation in the alleged offense;

(5) The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence;

(6) The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;

(7) Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday;

(8) Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;

(9) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and

(10) Any other factors deemed relevant by the judge.

The circuit court is required to make written findings on all of the above factors. Ark. Code Ann. § 9-27-318(h)(1). However, there is no requirement that proof be introduced against the juvenile on each factor, and the circuit court is not obligated to give equal weight to each of these factors in determining whether a case should be transferred. *Lindsey*, *supra*. We will not reverse a circuit court's determination of whether to transfer a case unless that decision is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. *Id.*

The circuit court made written findings on all of the above factors and concluded that there was not clear and convincing evidence that the case should be transferred. On appeal, Dickerson concedes that the first three factors weigh against transferring the case to the juvenile division, but he nonetheless argues that the court clearly erred. Dickerson argues that other factors weigh in favor of transfer, including his lack of prior violent history, his lack of sophistication and maturity, and his lack of culpability since there is no evidence that he took part in coordinating the shooting or that he carried a firearm with him. He also argues that the circuit court ignored numerous programs available to juvenile offenders nearing the age of eighteen when it found, in part, that he "turns 18 in September and there is little time remaining for services to be obtained." Dickerson points to Digby's testimony that there were "not a lot of [treatment options] that stop at 18."

While the court did find that there was "little time remaining," in the same paragraph the court noted that Dickerson could be committed to the Division of Youth Services and

that if the case is given an extended-juvenile-jurisdiction designation, he would be placed on probation for at least three years after his twenty-first birthday. Even if this factor weighed in favor of transferring, the court was not required to assign equal weight to this factor and was entitled to use its discretion in deciding the weight to be afforded each factor. *Lindsey*, *supra*. Furthermore, a juvenile may be tried as an adult solely because of the serious and violent nature of the offenses. *Sharp v. State*, 2018 Ark. App. 255, 548 S.W.3d 846. It is of no moment that Dickerson did not personally employ a gun used during the crimes; his association with the use of weapons in the course of the crimes satisfies the fact that the crimes were committed in a violent manner. *Id.* The court found that both crimes were serious, violent crimes committed against people and that the terroristic act was willful and premeditated. Dickerson was present in the car leading up to the event and present at the scene of the crime. We hold that the circuit court did not clearly err in denying Dickerson's motion to transfer.

Affirmed.

BARRETT and MURPHY, JJ., agree.

*James Law Firm*, by: *William O. "Bill" James, Jr.*, and *Drew Curtis*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Rebecca Kane*, Ass't Att'y Gen., for appellee.