Cite as 2026 Ark. App. 77

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR-25-63

| | |
|---|---|
| | Opinion Delivered February 11, 2026 |
| DAMITRIUS BLACKBURN | |
| APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT |
| V. | [NO. 72CR-23-1672] |
| STATE OF ARKANSAS | HONORABLE DIANE WARREN, |
| APPELLEE | JUDGE |
| | AFFIRMED |

**N. MARK KLAPPENBACH, Chief Judge**

Damitrius Blackburn was charged in the Washington County Circuit Court with committing attempted capital murder, a Class Y felony, and tampering with physical evidence, a Class D felony, when he was sixteen years old. He subsequently moved to transfer his charges to the juvenile division of circuit court. After a hearing, the circuit court denied his motion to transfer, and Blackburn appeals. We affirm.

Evidence at the transfer hearing established that Blackburn was first adjudicated delinquent in July 2021 on the charge of harassment, a Class A misdemeanor, and was placed on four months of supervised probation. In September 2022, a delinquency petition was filed accusing him of the offenses of aggravated riot, a Class D felony, and third-degree battery, a Class A misdemeanor. The State alleged, in part, that, while armed with a handgun, Blackburn struck a victim multiple times in the face with a closed fist. While

awaiting disposition of these charges, Blackburn was arrested for violating the terms of his release.  In November 2022, he was adjudicated delinquent and placed on fourteen months' probation.  Days later, the State filed another delinquency petition alleging that Blackburn committed the offenses of terroristic threatening, a Class D felony, and third-degree assault on a family or household member, a Class C misdemeanor.  The victim of these offenses was Blackburn's custodian whom Blackburn allegedly swung at, pushed, and threatened to shoot.  These charges were dismissed after Blackburn was placed in the custody of another guardian.

In the current case, Blackburn was arrested in August 2023 after police were called to the scene of a shooting at an apartment complex.  Inside a truck, police found a seventeen-year-old boy shot in the back of the head.  Sergeant Jessie Vermillion testified that security-camera footage showed two people, identified as Blackburn and a fifteen-year-old boy, walking out of an apartment toward the truck in the parking lot.  The video showed that the two people ran back to the apartment two minutes later.  The other boy told police that he accompanied Blackburn to sell a gun, that he saw Blackburn and the victim fighting over the gun inside the truck, and that he heard a gunshot.

When interviewed by police, Blackburn said that he had arranged to sell a Glock 17 to the victim, but the victim tried to take the gun from him.  Blackburn claimed that the gun was unloaded when he arrived at the truck, but when the victim tried to take it, he wrestled it back, loaded it, and attempted to fire a warning shot.  Blackburn told police that he took the gun apart and discarded it along a trail.  The gun was never found.  Vermillion believed there was evidence that the shot to the back of the victim's head was premeditated.  The

bullet traveled through the victim's brain, and he was in a medically induced coma for several days. The victim told police that Blackburn had pointed the gun at him, and he thought Blackburn was going to shoot, so he hit Blackburn and tried to grab the gun.

At the time of the August 2024 transfer hearing, Blackburn had been in custody since August 2023. Two mental-health professionals who had worked with him during this time, Thalia Cendoya and MyKayla Wallace, testified about traumatic events Blackburn had suffered, including having his mother in and out of his life and his father being out of his life before committing suicide when Blackburn was thirteen years old. Among other things, he had also suffered from a lack of supervision, substance use in his family, excessive physical punishment, and having guns brought to his home. Cendoya and Wallace explained that trauma can alter a child's brain development and that it had affected Blackburn's decision making. He was diagnosed with disruptive-mood-dysregulation disorder and posttraumatic stress disorder, and some symptoms of these disorders were severe recurrent outbursts with little provocation, irritable and angry mood, and reckless behavior. While detained, Blackburn had started medications for his mental health, had been well engaged in his therapy sessions, and had made progress in his ability to reflect on his behaviors. Wallace believed that he would benefit from continued individual therapy, family therapy, medication management, and mentors.

Blackburn's former probation officer, Kelly Shelton, described him as very friendly and said that he had generally complied with the requirements of checking in, attending counseling, and passing drug screens. Shelton said that Blackburn's guardian had very

consistent rules that Blackburn did not agree with, and this led to a very strained relationship. Shelton did not believe that juvenile services had been exhausted and believed that he could benefit from more intensive counseling, a mentoring program, and a sixty-day boot-camp type program.

Dr. Denise Hoy, Blackburn's alternative school principal in 2021 and 2022, said that Blackburn had been willing to listen and learn and that he had male mentors in his life though his involvement with a basketball program and Boys and Girls Club. She said that he had structure at home, but he "wasn't ready for it." Chris Tinsley, director of the Washington County Juvenile Detention Center, testified that Blackburn had matured since 2021 and had made some progress in therapy. Tinsley said that Blackburn planned on obtaining his diploma or GED, and Tinsley felt that there were services in juvenile court that could benefit him, including the Division of Youth Services (DYS). Brooke Digby, juvenile ombudsman for the State, listed the educational, vocational, and mental-health services that would be available to Blackburn in DYS as well as the case-management and aftercare services. Digby felt that Blackburn was very open to treatment and would benefit from DYS programs.

A prosecuting attorney has discretion to charge a juvenile, sixteen years of age or older, in the juvenile or criminal division of circuit court if the juvenile has allegedly engaged in conduct that, if committed by an adult, would be a felony. Ark. Code Ann. § 9-27-318(c)(1) (Repl. 2020). When a juvenile moves to transfer his charges to the juvenile division of circuit court, the juvenile bears the burden of proving by clear and convincing evidence

4

that the case should be transferred. Ark. Code Ann. § 9-27-318(h)(2). Clear and convincing

evidence is that degree of proof that will produce in the trier of fact a firm conviction as to

the allegation sought to be established. *Lopez v. State*, 2021 Ark. App. 467, 637 S.W.3d 318.

In a transfer hearing, the circuit court shall consider and make written findings on all

of the following factors:

(1) The seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court;

(2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;

(3) Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;

(4) The culpability of the juvenile, including the level of planning and participation in the alleged offense;

(5) The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence;

(6) The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;

(7) Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday;

(8) Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;

(9) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and

(10) Any other factors deemed relevant by the judge.

Ark. Code Ann. § 9-27-318(g), (h)(1). There is no requirement, however, that proof be introduced against the juvenile on each factor, and the circuit court is not obligated to give equal weight to each of these factors in determining whether a case should be transferred. *Dickerson v. State*, 2024 Ark. App. 58, 683 S.W.3d 617. We will not reverse a circuit court's determination of whether to transfer a case unless that decision is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. *Id.*

Here, the circuit court made written findings on the factors and concluded that Blackburn had failed to prove by clear and convincing evidence that the case should be transferred. The court noted that he had previously been adjudicated for gun-related violence and acts that caused physical injury and had been placed under supervision and received services; however, his actions had demonstrated "criminogenic thinking patterns" that had not improved with services. The court also found that Blackburn had failed to prove that a designation as an extended juvenile jurisdiction (EJJ) offender was warranted.

In challenging the court's findings on the first two factors, Blackburn focuses on the fact that the allegations are unproved at this point and states that the limited facts suggest that the victim attempted to rob him, and the shooting was accidental. However, we have held that the sufficiency of the evidence to support a conviction should not be considered in making a decision to transfer. *State v. Graydon*, 86 Ark. App. 319, 184 S.W.3d 476 (2004).

Not even a showing of probable cause is required at a juvenile-transfer hearing. *Id.* As the circuit court found, there was evidence at the transfer hearing that Blackburn allegedly committed the serious offense of attempted capital murder; that it was allegedly committed in an aggressive, violent, and willful manner; and that it caused physical injury to a person.

With regard to his culpability and level of involvement, Blackburn argues that there was another juvenile involved, that he planned only to sell the gun, and that his culpability should be considered in light of the evidence that he experienced trauma that affected his brain development. While another person was present outside the truck where the crime occurred, Blackburn was the primary actor inside the truck with the victim. Although the circuit court still found Blackburn culpable, it did consider, as it found elsewhere in its order, that Blackburn suffered from mental-health disorders and had experienced numerous traumatic events in his life. Blackburn next argues that his juvenile history favors transfer because it documents his traumas and diagnoses and demonstrates that he has had productive interaction in general with the juvenile system. As the court found, however, his history also shows that he has been adjudicated "for similar acts of gun-involved violence causing personal injury and has a history of antisocial behavior and pattern of physical violence as demonstrated by his prior adjudications and violations of terms and conditions of the supervision."

Blackburn also argues that his prospects for rehabilitation in the juvenile system strongly support transferring his case. The circuit court acknowledged that Blackburn had never been committed to DYS. We note, however, that Blackburn had been involved in the

7

juvenile system since 2021, had received services, and was on probation at the time of the alleged offenses. Furthermore, we have held that an increase in the seriousness of the alleged offenses indicated a lack of rehabilitation. *Graydon*, *supra*. Even if this factor weighed in favor of transfer, however, the court was not required to assign equal weight to this factor and was entitled to use its discretion in deciding the weight to be afforded each factor. *Dickerson*, *supra*. The alleged offense here is an undisputedly serious and violent offense committed solely by Blackburn that resulted in serious physical injury to another person. Although an appellant would have the court give greater weight to other factors, we will not reweigh the evidence presented to the circuit court. *Lopez*, *supra*.

Blackburn states that the court did not address the tenth statutory factor—any other factors deemed relevant by the judge—and argues that it should have considered his childhood trauma, psychological disorders, and generally positive response to services. As previously noted, however, the circuit court did make findings about Blackburn's mental health diagnoses and its effects on his behavior and the numerous traumatic events he had experienced. The statute does not require the court to track the statutory language verbatim or address each factor in sequential order. *Rolfe v. State*, 2026 Ark. 4, ___ S.W.3d ___.

Although some evidence weighed in favor of granting the motion, the circuit court appropriately weighed all the evidence, and we are not left with a firm and definite conviction that a mistake was made. Incorporating his arguments as to transfer, Blackburn also argues that the circuit court clearly erred in refusing to exercise EJJ. We have held that there can be no EJJ designation unless the case is already in the juvenile division or is transferred to

the juvenile division. *Lopez, supra*; *see also Lindsey v. State*, 2016 Ark. App. 355, 498 S.W.3d 336. Because we affirm the denial of the transfer motion, EJJ is not applicable. *Id.*

Affirmed.

VIRDEN and MURPHY, JJ., agree.

*Tim Cullen*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Michael Zangari*, Ass't Att'y Gen., for appellee.