Cite as 2026 Ark. App. 158

# ARKANSAS COURT OF APPEALS
## DIVISION III
No. CR-25-146

| | | |
|---|---|---|
| DEQUON ISRAEL | | Opinion Delivered  March 4, 2026 |
| | APPELLANT | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26CR-24-190] |
| V. | | |
| | | HONORABLE KARA A. PETRO, JUDGE |
| STATE OF ARKANSAS | | AFFIRMED |
| | APPELLEE | |

**MIKE MURPHY, Judge**

Appellant Dequon Israel was charged in the Garland County Circuit Court with two counts of capital murder and one count of aggravated robbery when he was sixteen years old. He subsequently moved to transfer his charges to the juvenile division of circuit court. After a hearing, the circuit court denied his motion to transfer, and Israel appealed. We affirm.

Evidence at the transfer hearing established that on March 22, 2024, Israel and three accomplices robbed and murdered two females, Adrianna Howell and Mahayla Swayze. Israel and his three friends made plans to rob Howell while buying marijuana from her. Howell was known not to carry a weapon to defend herself during drug deals. After arranging to meet Howell, Israel and the three others waited for her with guns. When Howell and Swayze arrived in Howell's car, Israel and one codefendant approached the passenger's side where Swayze was sitting, while the two other codefendants approached the driver's side where

Howell was sitting. Israel claimed that they were just going to grab the marijuana from Howell and run; however, when Israel walked back around to the driver's side, he saw that an accomplice was holding Howell at gunpoint, so Israel ran back to the passenger's side, pointed his gun at Swayze, and ordered her out of the car. At that point, the accomplice holding Howell at gunpoint began to shoot, and all four defendants started running. The night of the crimes, Israel placed his gun in a bag, and it was picked up by someone and disposed of. Israel told his mother about the crimes the next day, and she took him to the police station.

Officer Jordan Leonard with the Garland County Juvenile Court testified that Israel has a history as a juvenile offender. In February 2023, Israel pleaded true to second-degree battery for slapping a four-year-old child in the face and attempting to suffocate the child. At the time of this offense, he had been released from probation and supervision. Officer Leonard also testified that Israel's conduct disorder made him prone to defiance and physical aggression, so it would be hard to find placement in a juvenile program and, realistically, the only option would be the Division of Youth Services ("DYS").

Police Chief Carl Seymour with the Hot Springs School District testified that he knew Israel because he had been in contact with Israel's mother concerning his school attendance. Israel also helped him with yardwork in the afternoons and on weekends. He testified that Israel was a follower who did not have a lot of parental supervision but that he knew Israel to be a good kid who did well when given guidance and structure. Chief Seymour admitted that Israel was suspended from the football team for fighting. Despite this, Israel's high

school football coach testified that Israel was a great student athlete who listened well. His coach testified he was surprised to hear about Israel's arrest.

Israel's grandmother and uncle both testified that Israel lived with them for a few years because his mother was in an abusive relationship. Israel's grandmother stated that he lived with her for three years until he was seven years old and that he was bullied at school and would get into fights. Israel's mother testified that she wasn't always home to supervise him and that he has an impulse disorder. She also testified that he was not supposed to hang out with the other codefendants involved in the shooting.

Allison Jordan, a clinical social worker with Ouachita Behavioral Health, testified that Israel has been her client for the past two years and that his diagnoses are unspecified disruptive impulsive conduct and conduct disorder. She testified that he is progressing, and his impulsiveness had been decreasing before the shootings. Brooke Digby with the Arkansas Public Defender Commission testified that there were more options for Israel than DYS and that he could potentially qualify for residential placement and reentry programs in the juvenile system. Digby also testified that Israel could eventually be subject to a suspended adult sentence if he were to be transferred to the juvenile division. She testified that she received "glowing reports" about Israel. Last, officers with the Benton County Juvenile Detention Center where Israel was detained testified that he was a good student and a fast learner.

Israel's school records were also admitted into evidence, which showed that he had poor grades, a multitude of in-school suspensions, and bus disciplinary reports; he was involved in fighting, brought a knife to campus, and stole a teacher's phone.

After the hearing, the circuit court issued a written order denying Israel's motion to transfer. Israel filed a timely notice of appeal. On appeal, Israel argues that the circuit court erred by denying the motion to transfer, claiming eight of the circuit court's findings were clearly erroneous.

A prosecuting attorney has discretion to charge a juvenile, sixteen years of age or older, in the juvenile or criminal division of circuit court if the juvenile has allegedly engaged in conduct that, if committed by an adult, would be a felony. Ark. Code Ann. § 9-27-318(c)(1) (Repl. 2020). When a juvenile moves to transfer his charges to the juvenile division of circuit court, the juvenile bears the burden of proving by clear and convincing evidence that the case should be transferred. Ark. Code Ann. § 9-27-318(h)(2). Clear and convincing evidence is that degree of proof that will produce in the trier of fact a firm conviction as to the allegation sought to be established. *Lopez v. State*, 2021 Ark. App. 467, 637 S.W.3d 318.

In a transfer hearing, the circuit court shall consider and make written findings on all of the following factors:

> (1) The seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court;
>
> (2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;

4

(3) Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;

(4) The culpability of the juvenile, including the level of planning and participation in the alleged offense;

(5) The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence;

(6) The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;

(7) Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday;

(8) Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;

(9) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and

(10) Any other factors deemed relevant by the judge.

Ark. Code Ann. § 9-27-318(g), (h)(1). There is no requirement, however, that proof be introduced against the juvenile on each factor, and the circuit court is not obligated to give equal weight to each of these factors in determining whether a case should be transferred. *Blackburn v. State*, 2026 Ark. App. 77, ___ S.W.3d ___.

We will not reverse a circuit court's determination whether to transfer a case unless that decision is clearly erroneous. *Id.* In considering whether the circuit court's decision is

clearly erroneous, this court has determined that there are four tests to be applied when reviewing the entire record without reweighing the evidence:

> (1) Are the circuit court's written findings accurate and consistent with the evidence; and

> (2) If any factual findings are *not* consistent with the evidence, are such inconsistencies material enough to warrant a reversal of the transfer order?

> (3) Does the written order provide enough detail and facts to support the court's conclusions; and

> (4) Are there specific findings on the statutory factors tailored to the juvenile and the evidence?

*Minor Child v. State*, 2024 Ark. App. 393, at 11, 701 S.W.3d 751, 759. The denial of a juvenile-transfer motion is not clearly erroneous simply because some evidence might weigh in favor of granting the motion. *Shaw v. State*, 2023 Ark. App. 55, 660 S.W.3d 591.

Here, the circuit court made written findings on the factors and concluded that Israel had failed to prove by clear and convincing evidence that the case should be transferred. The court noted Israel was in possession of a gun, indicating that he likely considered the possibility of his actual involvement in violence even when he knew that the two women never carried guns. While he may not have fired the shots that killed the women, the court found he was "completely involved in the participation of this offense." It noted that he "showed a degree of sophistication by participating in the planning of the offense, going to the other side of the vehicle to hold the other woman at gunpoint, and the disposal of the gun." The court found that, despite being "given an opportunity to rehabilitate his life via

6

probation after attacking a small child [. . . ,] he chose to participate in the Capital Murder of two young women."

In challenging the court's findings on the first factor, Israel does not appear to challenge the finding that the charges were of a serious nature; instead, he contends the analysis lacks detail and is not consistent with the evidence presented. He directs us to the fact that he played only a minimal role and to his positive performance as a detainee. This is a request to reweigh the evidence, and the circuit court's affording more weight to certain pieces of evidence over others does not signal error. *Anderson v. State*, 2026 Ark. App. 2, at 9, ___ S.W.3d ___, ___. Furthermore, our supreme court has held that a juvenile may be tried as an adult solely because of the serious and violent nature of the offense. *C.B. v. State*, 2012 Ark. 220, 406 S.W.3d 796. As the court found, capital murder is the "most serious offense possible."

Concerning factor two, Israel argues that the circuit court erred in its analysis because it contradicted the evidence presented since the facts do not establish premeditation or willfulness. We disagree. Israel testified that he participated in seeking out the women who he knew to be unarmed in order to steal drugs from them. As identified by the circuit court, he actually possessed a gun, which shows he had considered the possibility of violence.

Next, Israel maintains that factors four and five weigh in favor of transfer and that the circuit court erred in its analysis by mischaracterizing the testimony. First, Israel admittedly went along with the robbery, and it is inconsequential that he was not the one to actually shoot like he suggests. This is especially so given that when he saw the shooter pull

7

out his gun, Israel ran and pointed his firearm at the other woman and ordered her out of the car. Additionally, his school disciplinary records detail his "chronic and habitual misbehavior." Israel again simply disagrees with the circuit court's failure to give weight to his progress and his leadership in football, which the circuit court was not required to do.

As to factor six, Israel contends that the court's findings do not accurately reflect the evidence presented concerning his maturity. He notes that he did not have a driver's license or a car, which severely restricted the "what, where, when, and how" of his lifestyle. To support this argument, he cites *Minor Child*¸ 2024 Ark. App. 393, 701 S.W.3d 751, in which we reversed the denial of a transfer to juvenile court after holding that the circuit court's written findings were inaccurate and inconsistent with the entire evidence presented. We have since taken the opportunity to stress that *Minor Child* should not be read to mean that an appellate court may decide juvenile-transfer cases anew. *See Minor Child v. State*, 2025 Ark. App. 300, at 10, 715 S.W.3d 117, 124 (agreeing with the circuit court's distinguishing of *Minor Child*, 2024 Ark. App. 393, 701 S.W.3d 751, in that it did not involve an act of premeditation involving the use of a firearm or other weapon against another person or the treatment of past aggression). There is still no requirement that proof be introduced against the juvenile on each factor, and the circuit court is still not obligated to give equal weight to each of these factors in determining whether a case should be transferred. *Id.*

Turning to the facts at hand, Israel is again essentially arguing that the circuit court did not weigh this factor the way he wanted it weighed, which does not make the court's decision clearly erroneous or necessitate remand.

Regarding the seventh factor, Israel contends that the circuit court misstated his diagnosis and that its finding was inconsistent with testimony that resources other than DYS would have been available to him. He alleges that the circuit court failed to consider the testimony of Brooke Digby, who testified that he would be eligible for services through an "adult blended sentence" in which he could be sentenced as an adult if he violated his juvenile sentence. Israel argues that the circuit court, instead, focused solely on the testimony of his probation officer, who testified that the only option would be DYS.

However, the circuit court clearly understood Israel's diagnosis: it clarified his diagnosis during Allison Jordan's testimony, and it acknowledged that Israel had been diagnosed with "unspecified disruptive impulse control and conduct disorder unspecified." Regardless, the testimony established that Israel's placement in a juvenile program would be difficult due to his defiance and physical aggression. The circuit court did not clearly err.

Concerning the remaining factors, Israel again asks this court to reweigh the factors considered by the circuit court. As the moving party, appellant had the burden of proving by clear and convincing evidence that the case should be transferred to the juvenile division of circuit court. *Moore v. State*, 2018 Ark. App. 516, at 8, 558 S.W.3d 918, 922. Here, the circuit court heard the evidence, weighed it, reached its decision, and enumerated its conclusions in a written order. The circuit court properly considered the evidence on the factors as required by the statute, and it was free to use its discretion in the weight afforded to each factor. *Id.*

For the reasons stated above, we affirm the circuit court's denial of Israel's motion to transfer his case to the juvenile division of the circuit court.

Affirmed.

GLADWIN and WOOD, JJ., agree.

*Erin W. Lewis*, for appellant.

*Tim Griffin*, Att'y Gen., by: *A. Evangeline Bacon*, Ass't Att'y Gen., for appellee.